[No. B183269. Second Dist., Div. Three. Jan. 25, 2006.]

AMERICAN ALTERNATIVE INSURANCE CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AERO FALCONS, LLC, et al., Real Parties in Interest.

**COUNSEL**

Michaelis, Montanari & Johnson, Garry L. Montanari; Lindahl, Schnabel, Kardassakis & Beck and Kelley K. Beck for Petitioners.

Coddington, Hicks & Danforth, Randolph S. Hicks and Richard G. Grotch for United States Aviation Underwriters, Inc., as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Kirkpatrick & Lockhart Nicholson Graham, David P. Schack and Kevin S. Asfour for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—American Alternative Insurance Corporation and other insurers,[1] by petition for writ of mandate, challenge an order granting summary adjudication in favor of their insureds, Aero Falcons, LLC (Aero Falcons), and Sands Media, Inc. (Sands Media) (collectively the insureds). American contends the trial court erroneously determined that the insurer has a duty under its policy to reimburse the insureds for attorney fees incurred to recover possession of an airplane after it was seized by the sheriff in Bay County, Florida. We resolve an ambiguity in policy language in favor of the objectively reasonable expectations of the insureds and conclude that American is required to reimburse expenses reasonably incurred by the insureds to recover possession of the seized airplane, including attorney fees. We therefore will deny the petition.

### FACTUAL AND PROCEDUAL BACKGROUND

#### 1. *Factual Background*

Aero Falcons is a limited liability company whose sole member is Sands Media. Sands Media is a corporation owned by one Joseph Francis. American issued a Broad Horizon Aviation Insurance Policy to Aero Falcons and Sands Media insuring a private airplane owned by Aero Falcons. The policy period commenced on March 17, 2003. The policy included coverage parts for liability, medical expenses, and physical damage to the subject aircraft. The physical damage part included coverage L, which states, "The Company shall pay for *physical damage* to the *scheduled aircraft* including *disappearance* of the *scheduled aircraft*." The italicized terms in the policy are defined in the policy. The policy states, " '*Physical damage*' means direct and accidental

---

[1] The other petitioner insurers are Converium Insurance (North America) Inc., Tokio Marine & Fire Insurance Company, Ltd. (U.S. Branch), National Indemnity Company, and Royal Indemnity Company. For reasons of simplicity and clarity, we refer in the singular to the petitioners collectively as "American."

physical loss of or damage to the *scheduled aircraft*, . . . but does not include loss of use or any residual decrease in value after repairs have been made."

The policy states, in the physical damage part, under the heading "CONDI-TIONS": "The *Named Insured* shall: [¶] (a) protect the damaged property whether or not Coverage L . . . of this policy applies and if the *Named Insured* does not, the Company shall have no obligation to pay for any further *physical damage* due to the *Named Insured's* failure to protect the damaged property; reasonable expenses incurred in affording such protection shall be deemed to be incurred at the Company's request." In addition, and of significance to our analysis, the policy contained an exclusionary provision that precluded any claim "caused by . . . confiscation, . . . seizure [or] detention . . . by or under the order of any Government (whether civil, military or defacto) or public or local authority." The insureds, however, paid an extra premium for an endorsement to the policy that specifically *deleted* this exclusionary language.

The Bay County Sheriff seized the airplane and a Ferrari automobile in Panama City, Florida on April 2, 2003. The sheriff commenced a civil forfeiture proceeding by filing a petition for final order of forfeiture alleging that the airplane and automobile were used in the commission of a felony and were subject to forfeiture under the Florida Contraband Forfeiture Act. The felonies allegedly committed by Francis and other individuals included procuring persons under the age of 18 for prostitution, sexual exploitation of children, and possession of and trafficking in controlled substances. Aero Falcons contested the sheriff's forfeiture claim. The Florida circuit court found probable cause to seize the automobile, *but found no probable cause to seize the airplane*. The sheriff released the airplane on May 22, 2003. The airplane had suffered minor damage.

### 2. Trial Court Proceedings

The insureds filed the complaint in this action in February 2004, and filed a second amended complaint against American in August 2004, alleging counts for breach of contract, tortious breach of contract, and declaratory relief as to the parties' rights and duties under the policy. The insureds moved for summary adjudication seeking to establish (1) that American has a duty under the policy to pay attorney fees incurred "to protect the aircraft . . . after it was seized by the Bay County (Florida) Sheriff"; (2) that American has a duty under the policy "to pay all amounts necessary to repair damage suffered by the aircraft as a result of the seizure"; and (3) that the insureds are entitled to a declaration that American has a duty under the policy to pay all expenses, including attorney fees, incurred "to repair and protect the [a]ir-craft." American also moved for summary adjudication. At the hearing on the

motions, the parties stipulated that American had a contractual obligation to pay the reasonable repair costs for damage to the aircraft incurred while it was in the sheriff's custody.

The court granted summary adjudication in favor of the insureds on all three issues, and denied the motion by American. The court construed "damaged property" in the provision requiring the insureds to "protect the damaged property" or forego coverage for "any further *physical damage*" in a manner consistent with the defined term *"physical damage."* The court noted that the policy defined *"physical damage"* to include physical loss of the aircraft, and concluded that the insureds had suffered a physical loss of the airplane to the sheriff and were entitled to recover the attorney fees reasonably incurred to recover the airplane. The court granted summary adjudication on issues 1 and 3 accordingly, and granted summary adjudication on issue 2 as stipulated by the parties.

American petitioned for a writ of mandate, challenging only the ruling on the summary adjudication motion by the insureds. We issued an order to show cause.

## CONTENTIONS

American contends (1) the "protect the damaged property" condition provides for reimbursement of expenses incurred to avoid further damage to the aircraft, but does not provide for reimbursement of expenses incurred to avoid further physical loss of the aircraft; and (2) the language is unambiguous, but if there is an ambiguity, the insureds could have no reasonable expectation of reimbursement for attorney fees incurred to recover the seized aircraft, in part because there would be no "direct and accidental physical loss" of the airplane as required under the policy if there were a final order of forfeiture, so the insureds' efforts to avoid a forfeiture were not for the benefit of American. In addition to these contentions, United States Aviation Underwriters, Inc., as amicus curiae on behalf of American contends (3) the policy does not provide for reimbursement of attorney fees "incurred in a forfeiture proceeding arising out of serious criminal charges against an insured"; and (4) the seizure was not "accidental" within the meaning of the policy because the seizure "arose out of numerous felony charges" against the insureds and Francis.

## DISCUSSION

### 1. *Standard of Review*

A party is entitled to summary adjudication of a cause of action or an issue of duty if there is no triable issue of material fact and the matter can be

adjudicated as a question of law. (Code Civ. Proc., § 437c, subds. (c), (f)(1).) The court must view the evidence and reasonable inferences from the evidence in the light most favorable to the opposing party, as on a motion for summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The ruling on a motion for summary adjudication presents a question of law, so therefore, our review is de novo. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94].)

## 2. *Relevant Rules of Contract Interpretation*

■ The ordinary rules of contract interpretation apply equally to contracts of insurance. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) The mutual intention of the contracting parties at the time the contract was formed governs. (Civ. Code, § 1636; *Palmer, supra,* at p. 1115.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647.) We consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation. (*Id.,* § 1641.) We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.,* § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.,* § 1638.)

■ Contractual language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the policy as a whole. (*Palmer v. Truck Ins. Exchange, supra,* 21 Cal.4th at p. 1115.) If policy language is found to be ambiguous, an interpretation in favor of coverage is reasonable only if it is consistent with the objectively reasonable expectations of the insured. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Whether contractual language is ambiguous is a question of law that we review de novo. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) An ambiguity in an insurance contract must be resolved in a manner consistent with the objectively reasonable expectations of the insured. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1265; *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].) ■ The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 913 [75 Cal.Rptr.2d 573]; see *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 [117 Cal.Rptr.2d 220, 41 P.3d 46].)

■ In determining whether an ambiguity exists, a court should consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37, 39–40 [69 Cal.Rptr. 561, 442 P.2d 641].) Indeed, as we explained in *Nissel v. Certain Underwriters at Lloyds of London* (1998) 62 Cal.App.4th 1103 [73 Cal.Rptr.2d 174], "[i]n order to conclude that an ambiguity exists which will be construed against an insurer, it is necessary first to determine whether the coverage under the policy, which would result from such a construction, is consistent with the insured's *objectively reasonable expectations.* [Citation.] In order to do this, the disputed policy language must be examined *in context* with regard to its function in the policy. [Citation.] This requires a consideration of the policy as whole, the circumstances of the case in which the claim arises and 'common sense.' [Citation.]" (*Id.* at pp. 1111–1112.) Even language that may be plain and clear may be found to be ambiguous when read in the context of the policy and the circumstances of the case and, in order to give effect to the insured's objectively reasonable expectations, construed in the insured's favor. (See *MacKinnon v. Truck Ins. Exch.* (2003) 31 Cal.4th 635, 652 [3 Cal.Rptr.3d 228, 73 P.3d 1205] [application of policy definition of "pollutant" as "any irritant or contaminant" rejected in favor of traditional understanding of term "pollution"; thus, recovery for personal injuries sustained by a tenant when landlord negligently sprayed building with a pesticide in order to eradicate yellow jackets was not precluded by pollution exclusion because court limited the exclusion's application to "*environmental*" pollution; such a limitation was consistent with the insured landlord's objectively reasonable expectations]; see also *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 482 [9 Cal.Rptr.3d 701, 84 P.3d 385] [jeweler's policy providing property insurance excluded coverage for thefts from vehicle if insured was not "actually in or upon" vehicle; this term was held to be ambiguous, and construed in the insured's favor, when considered in the context of a theft which occurred when insured's employer stepped outside vehicle to inspect tailpipe, because a reasonable insured would expect coverage under such circumstances].)

3. *Coverage L Promised Coverage for a Governmental Seizure of the Scheduled Aircraft*

As we have already described, coverage L promised indemnity for any "*physical damage*" to the scheduled aircraft. The term "*physical damage*" was specifically defined to include a "direct and accidental physical loss" of the aircraft. On its face, such a coverage promise could reasonably extend to a governmental seizure or confiscation. American presumably so construed the policy since there was an explicit exclusion included in the policy

precluding such coverage. The insureds, however, had purchased an endorsement expressly deleting that exclusion. In our view, this supports an objectively reasonable expectation that coverage L provided coverage for a governmental seizure.[2] Apart from arguments that such a conclusion should be qualified by the nature of any conduct of the insureds that may have led to such seizure,[3] it does not appear that American disagrees. Thus, the real dispute in this case is not over the scope of coverage promised in the insuring clause, but rather the proper interpretation to be given to the policy condition requiring the insureds to protect any "damaged property." We now turn to that issue.

4. *An Interpretation of the Policy Condition Relating to the Protection of "Damaged Property" in Favor of Expense Reimbursement Is Consistent with the Insureds' Objectively Reasonable Expectations*

The policy condition states that the insureds must "protect the damaged property," that if the insureds fail to do so American "shall have no obligation to pay for any further *physical damage* due to the *Named Insured's* failure to protect the damaged property," and that "reasonable expenses incurred in affording such protection shall be deemed to be incurred at the Company's request." The term "damaged property" is not defined in the policy. Although the absence of a policy definition does not necessarily create an ambiguity, "in an appropriate case, the absence of a policy definition, though perhaps not dispositive, might weigh, even strongly, in favor of finding an ambiguity." (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 866–867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

"Damaged property" literally refers to property that has been damaged. The policy does not define "damaged" or "damage" standing alone. The ordinary meaning of "damaged" with reference to tangible property such as aircraft is injured. (See Webster's 3d New Internat. Dict. (1993) p. 571.) The corresponding ordinary meaning of "damage," used as a noun, is injury. The

---

[2] The bargained-for deletion of an exclusion is not unlike, in its effect, an exception to an exclusion. Both limit or restrict the application of the original exclusionary clause. While an exception to an exclusion cannot provide coverage that is not reasonably within an insuring clause (*Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 144–145 [77 Cal.Rptr.2d 642], disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 [88 Cal.Rptr.2d 366, 982 P.2d 229]; *St. Paul Fire & Marine Ins. Co. v. Coss* (1978) 80 Cal.App.3d 888, 896 [145 Cal.Rptr. 836]), it can help to resolve an ambiguity in an insuring clause in favor of coverage (*National Union Fire Ins. Co. v. Lynette C.* (1991) 228 Cal.App.3d 1073, 1079, 1080–1081 [279 Cal.Rptr. 394]). Unquestionably, it may be considered part of the general circumstances impacting an insured's objectively reasonable expectations as to the scope and extent of coverage under a policy.

[3] We deal with those arguments *post.*

policy definition of *"physical damage"* appears to use the term "damage" in its ordinary sense: " *'Physical damage'* means direct and accidental physical loss of or damage to the *scheduled aircraft, spare engine, spare part* or *mechanics' tools,* but does not include loss of use or any residual decrease in value after repairs have been made." This policy definition of *"physical damage,"* however, encompasses not only "damage" to the aircraft in its ordinary sense, but also the *physical loss* of the aircraft. Thus, the word "damage" as used in the definition of *"physical damage"* might reasonably be limited to physical injury, but the term *"physical damage"* encompasses both injury *and* physical loss.

American, however, urges upon us a strict interpretation of "damaged property" so as to limit the application of that term to property that has been damaged in the ordinary sense of the word; that is, physical injury. American argues that "damaged property," unlike *"physical damage"* and *"property damage,"* is not a defined term, and the use of the word "damage" in its ordinary sense elsewhere in the policy in the definition of *"physical damage"* suggests that "damaged" in "damaged property" is used in its ordinary sense and is not endowed with a broader meaning that would encompass physical loss. Consistent with this interpretation, "to protect the damaged property" in this context would mean to prevent further physical injury.

On the other hand, the use of the word "damage" as part of the defined term *"physical damage"* which encompass both physical injury and physical loss, may reasonably be read to endow the word "damaged" in "damaged property" with a broader meaning that also encompasses physical loss. The juxtaposition of *"physical damage"* and "damaged property" in the language of the policy condition—"further *physical damage* due to the *Named Insured's* failure to protect the damaged property"—also suggests that "damaged property" may include any property that is subject to *"physical damage,"* although it by no means compels that conclusion. Consistent with this interpretation, "to protect the damaged property" in this context would include *both* prevention of further injury *and* prevention of further physical loss. This second interpretation of the term "damaged property" is the one advocated by the insureds.

■ We conclude that the latter interpretation is consistent with the insureds' objectively reasonable expectations. The apparent purpose of the insureds' obligation to "protect the damaged property whether or not Coverage L . . . of this policy applies" is to prevent further avoidable *"physical damage"* that otherwise potentially would be covered under the policy. Accordingly, the policy condition states that the insurer has no obligation to pay for "any further *physical damage"* that could have been avoided. The purpose of avoiding further potentially covered *"physical damage"* is equally

served whether the insureds acts to prevent further "physical loss of," or "damage to," the aircraft, as those terms are used in the policy definition of *"physical damage."* The expectation that the policy provided for reimbursement of expenses reasonably incurred to prevent further "physical loss of" the airplane caused by the seizure and detention therefore was objectively reasonable.

### 5. *Unproved Allegations of Criminal Acts by the Insureds Are of No Assistance to American*

We reject American's argument that a forfeiture based on criminal activity would not be covered because the loss would not be "accidental" from the standpoint of the insureds, that the insureds' efforts to recover possession of the airplane therefore were solely for their own benefit, and that the insureds could have no reasonable expectation of reimbursement for attorney fees incurred solely for their own benefit. The purpose of the insureds' obligation "to protect the damaged property" is to avoid further potentially covered *"physical damage"* to the aircraft. Because, as we have explained, further physical loss of the airplane was *potentially covered*, it is of no moment that there also was a potential for no coverage if the criminal charges had been proved. Regardless of the unproved allegations by the sheriff, the insureds sought to avoid a forfeiture and recover possession of the airplane and were successful in that effort. American cannot avoid its policy obligation by speculatively assuming a different set of facts (i.e., that the sheriff's seizure was proper and the loss of the airplane was due to its use in criminal activity).

We reject the similar argument by the amicus curiae that the policy does not provide for reimbursement of attorney fees "incurred in a forfeiture proceeding arising out of serious criminal charges against an insured." The policy contains no exclusion or limitation applicable to claims that arise from serious, and unproved, criminal charges against an insured. We also reject the argument by the amicus curiae that the seizure was not "accidental" within the meaning of the policy because the seizure "arose out of numerous felony charges" against the insureds and Francis. "Accidental" in an insurance policy ordinarily means unintended and unexpected by the insured. (*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50–51 [261 Cal.Rptr. 273]; *St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].) The Florida court found that there was no probable cause to seize the airplane and did not find that the insureds had committed any crime. The fact that the seizure arose from *unproved* felony charges does not establish that the seizure was expected or intended by the insureds. On the record before us, the sheriff's seizure of the airplane, vis-à-vis the insureds, was a fortuitous "accident." The sheriff's action thus resulted in a "direct and accidental physical loss of" the aircraft.

In light of the foregoing, there is no need to reach or discuss the other arguments advanced by the parties. The insureds' motion to strike portions of American's reply brief is denied as moot. The motion pertains to portions of the brief that we do not rely on in rendering this opinion.

## *DISPOSITION*

The petition is denied. The order to show cause is discharged. Aero Falcons and Sands Media are entitled to recover their costs in this original proceeding.

Klein, P. J., and Kitching, J., concurred.