FILED

**NOT FOR PUBLICATION**

JAN 10 2017

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Security Pacific Bank, <br><br>       Plaintiff–Appellee, <br><br> v. <br><br> BANCINSURE, INC., an Oklahoma Corporation, <br><br>       Defendant–Appellant. | No. 14-56132 <br><br> D.C. No. 2:12-cv-09882-DMG-MRW <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted June 8, 2016
Pasadena, California

Before: RAWLINSON and BEA, Circuit Judges, and EATON,[**] Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] Richard K. Eaton, Judge for the U.S. Court of International Trade, sitting by designation.

1

The Federal Deposit Insurance Corporation ("FDIC"), acting as receiver of the failed Security Pacific Bank ("Security Pacific"), seeks a declaratory judgment regarding whether a directors-and-officers-liability-insurance policy ("D&O Policy") issued by BancInsure, Inc. ("BancInsure") to Security Pacific[1] covers losses arising from the negligence, gross negligence, and breach of fiduciary duty allegedly committed by certain of Security Pacific's former directors and officers. The district court concluded that the D&O Policy covers the FDIC's claims and thus granted summary judgment in favor of the FDIC. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

**1.** The D&O Policy excludes from coverage losses arising from legal actions brought "by, or on behalf of, or at the behest of" Security Pacific, a person insured under the D&O Policy, or "any successor, trustee, assignee or receiver" of Security Pacific ("insured-versus-insured exclusion"). The FDIC, as the duly constituted receiver of Security Pacific, seeks payment of losses it claims were caused to Security Pacific by its former directors and officers. On its face, the insured-versus-insured exclusion appears unambiguously to bar the FDIC's claims, and the FDIC does not suggest otherwise. Instead, the FDIC points to other provisions of

[1] The D&O Policy covered directors and officers of Security Pacific, its holding company, and other subsidiaries of the holding company through the date of Security Pacific's closure. We do not distinguish among the entities.

the D&O Policy that, in its view, evidence an intent to cover the FDIC's claims—or at least create an ambiguity in the terms of the D&O Policy that should be construed in favor of coverage. *See E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 389 (Cal. 2004).[2]

**2.** The FDIC contends that it is not a "receiver" within the meaning of the insured-versus-insured exclusion because, by statute, it has a "unique role" representing "multiple interests":[3] As receiver, the FDIC "succeed[s] to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director." 12 U.S.C. § 1821(d)(2)(A)(i). Because it is vested with the powers of a shareholder, the FDIC

---

[2] The parties agree that California law governs the interpretation of the D&O Policy.

[3] The FDIC argues that its "unique role . . . distinguishes it from a typical 'successor' or 'receiver.'" However, the FDIC does not clarify what powers it has that other receivers do not normally or cannot have, or vice versa. Rather, it cites several cases in which courts held that the FDIC was not included within the scope of an insurance policy's insured-versus-insured exclusion because the FDIC does not merely "step into the shoes" of a failed bank. *See, e.g.*, *Progressive Cas. Ins. Co. v. FDIC*, 926 F. Supp. 2d 1337, 1340 (N.D. Ga. 2013). But in none of those cases did the insured-versus-insured exclusion expressly include the term "successor" or "receiver." The Tenth Circuit recently found the insured-versus-insured exclusion in a nearly identical BancInsure insurance policy unambiguously to bar claims by the FDIC as receiver, in part because the insured-versus-insured exclusion expressly barred claims by a "receiver." *See BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1235–36 (10th Cir. 2015), *cert. denied sub nom. McCaffree v. BancInsure*, No. 15-982 (June 13, 2016).

points to an exception to the insured-versus-insured exclusion for losses arising from "a shareholder's derivative action brought on behalf of [Security Pacific] by one or more shareholders who are not [insureds under the D&O Policy] and make a Claim[4] without the cooperation or solicitation of" Security Pacific or any person insured under the D&O Policy ("shareholder-derivative-suit exception"). The FDIC argues that the shareholder-derivative-suit exception evidences an intent to cover its claims, because (1) the claims are similar to those brought in shareholder derivative suits; (2) the FDIC succeeded to the interests of Security Pacific's shareholders; and (3) after it was appointed receiver, only the FDIC could bring an action against Security Pacific's former directors and officers for their alleged negligence, gross negligence, and breach of fiduciary duty, *see Pareto v. FDIC*, 139 F.3d 696, 699–701 (9th Cir. 1998). The district court agreed with the FDIC, but we do not.

Causes of action against a corporation's directors and officers for their malfeasance belong to the corporation—not to the shareholders—and the board of directors is primarily responsible for enforcing the corporation's rights. *See*

---

[4] The term "Claim" in the D&O Policy "shall mean any judicial or administrative proceeding that is filed against an Insured Person in any state or federal court or administrative agency, in which such Insured Person could be subjected to a binding adjudication of liability for damages or other civil relief."

4

*Grosset v. Wenaas*, 175 P.3d 1184, 1189 (Cal. 2008). Security Pacific's board of directors could have authorized a direct suit against its former directors and officers for their alleged negligence, gross negligence and breach of fiduciary duty—but, had it done so, the D&O Policy's insured-versus-insured exclusion would have barred coverage of the claims.[5] The FDIC, as receiver, succeeded to the right of Security Pacific's board of directors to bring such a direct suit. *See* 12 U.S.C. § 1821(d)(2)(A)–(C).[6] But the insured-versus-insured exclusion—the text of which expressly includes the terms "successor" and "receiver," *cf. supra* note 3—would continue to bar coverage of claims brought by the FDIC against Security Pacific's former directors and officers as receiver of Security Pacific and as the successor to its board of directors.

---

[5] The "insured-versus-insured exclusion" "arose in D & O policies as a reaction to several lawsuits in the mid-1980s in which insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions. Such lawsuits created problems of moral hazard, collusion, and unintended expansion of coverage. The reasonable expectations of the parties were that they were protecting against claims by outsiders, not intracompany claims." *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 668 (9th Cir. 2009) (footnote omitted).

[6] As part of an agreement with BancInsure and certain of Security Pacific's former directors and officers, the FDIC voluntarily "waive[d] any claim against the [directors and officers] in excess of the [D&O] Policy Limits and further agree[d] to look only to the [D&O] Policy and the Policy Limits with respect to the FDIC's Claims."

A shareholder derivative suit is a secondary means of enforcing a corporation's rights and redressing its injuries, and a shareholder may bring a derivative suit only "when the board of directors fails or refuses to do so." *Grosset*, 175 P.3d at 1189. Reading the D&O Policy as a whole and in context, *see E.M.M.I.*, 84 P.3d at 389, the shareholder-derivative-suit exception extends the D&O Policy's coverage to losses from shareholder derivative suits, *but not* to suits brought by a successor or receiver. The D&O Policy's insured-versus-insured exclusion would exclude from coverage losses from a direct suit by the FDIC against Security Pacific's former directors and officers. *See supra.* The shareholder-derivative-suit exception does not change that result or render the insured-versus-insured exclusion ambiguous with respect to the FDIC as receiver merely because the FDIC *also* succeeded to the right of Security Pacific's shareholders to bring a derivative action—which right (1) is secondary to the FDIC's right to bring the same claims directly as Security Pacific's receiver and (2) may be exercised only if the FDIC does not exercise its primary right to bring

the claims directly.[7] *Cf. Reserve Ins. Co. v. Pisciotta*, 640 P.2d 764, 767–68 (Cal. 1982) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.").

We must also remember that the D&O Policy concerns an FDIC-insured, California-chartered bank. California law allows the Commissioner of Business Oversight to appoint the FDIC as receiver of a failed FDIC-insured state-chartered bank, *see* Cal. Fin. Code § 620,[8] and federal law permits the FDIC to accept such an appointment, *see* 12 U.S.C. § 1821(c). "Today, state regulatory authorities virtually always request the appointment of the FDIC when a receiver is appointed." FDIC, *Managing the Crisis* 215 (1998). Indeed, press releases show that the FDIC has been appointed receiver of every California-chartered bank that

---

[7] Moreover, the shareholder-derivative-suit exception extends coverage under the D&O Policy only to derivative suits brought "without the cooperation or solicitation" of Security Pacific. A shareholder derivative suit may be brought only if the corporation, through its board of directors, declines to pursue the claims at issue directly. *See Grosset*, 175 P.3d at 1189. Were the FDIC, as successor to the interests of Security Pacific's shareholders, to attempt to bring a derivative suit against Security Pacific's former directors and officers, it, as receiver of Security Pacific and successor to Security Pacific's board of directors, would necessarily have to "cooperat[e]" in the derivative suit by refusing to bring the same claims directly. In that circumstance, there would be no coverage for the manufactured shareholder derivative suit under the D&O Policy.

[8] Similar provisions were previously codified at Cal. Fin. Code §§ 3220–3225 (until December 31, 2010) and Cal. Fin. Code §§ 310–310.3 (until January 31, 2011).

has failed since 2001. *See* Cal. Dep't of Bus. Oversight, *Press Releases*, http://www.dbo.ca.gov/Press/press_releases/ (last visited Aug. 10, 2016). Interpreting the shareholder-derivative-suit exception to provide coverage to the FDIC's claims may very well read the term "receiver" out of the insured-versus-insured exclusion. We think the term "receiver" is clear and unambiguous and includes the FDIC in its role as receiver of Security Pacific. As such, the FDIC's claims fall within the scope of the D&O Policy's insured-versus-insured exclusion.

**3.** The standard policy form separately excluded coverage for losses arising from "any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization" ("regulatory exclusion"). However, the D&O Policy, through an endorsement ("regulatory endorsement"), deleted the regulatory exclusion in full and established a coverage sublimit for the formerly excluded claims. The FDIC argues that its claims would most naturally be excluded by the regulatory exclusion, and the deletion of that exclusion should be construed to favor coverage of its claims.

We agree that the regulatory exclusion, as against the insured-versus-insured exclusion, would more clearly exclude the FDIC's claims and that, "[i]n the interpretation of insurance contracts, a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even

8

though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." *Kavruck v. Blue Cross of Cal.*, 134 Cal. Rptr. 2d 152, 157 (Ct. App. 2003). However, deleting the specific provision does not necessarily alter the scope of the general provision. *Cf. Berry v. Am. Express Publ'g, Inc.*, 54 Cal. Rptr. 3d 91, 96 (Ct. App. 2007). The standard policy form contained two exclusions: (1) the insured-versus-insured exclusion; and (2) the regulatory exclusion. Each, standing alone, would have excluded the FDIC's claims. The regulatory endorsement deleted the regulatory exclusion but did not "vary, waive, or extend any of the [other] terms" of the D&O Policy,[9] and thus did not alter the scope of the insured-versus-insured exclusion. As a result, the FDIC's claims remain barred by the insured-versus-insured exclusion. *See Hervey v. Mercury Cas. Co.*, 110 Cal. Rptr. 3d 890, 897–98 (Ct. App. 2010).[10]

---

[9] The standard policy form "and any written endorsements attached [to the standard policy form] constitute the entire agreement between the parties."

[10] Nor is the regulatory endorsement superfluous. Shortly before it failed, Security Pacific gave BancInsure notice of two types of potential claims by the FDIC: (1) "enforcement actions against the individual officers and directors"; and (2) "as receiver for the Bank, . . . a civil action against the individual directors and officers seeking to recovery monetary damages as a result of their alleged conduct." The regulatory endorsement may have reinstated coverage for enforcement actions, which are not barred by the insured-versus-insured exclusion.

9

**4.** The FDIC also argues that extrinsic evidence shows that the D&O Policy's insured-versus-insured exclusion is at least ambiguous with respect to claims by the FDIC as receiver. However, extrinsic evidence may not be used to contradict the express terms of an insurance policy, *see, e.g.*, *id.* at 895, and we therefore do not consider it.

**5.** Because we conclude that the D&O Policy does not cover the FDIC's claims, we do not address BancInsure's alternative argument that Security Pacific had failed to give timely notice of the FDIC's claims or the circumstances that gave rise to the claims.

\* \* \*

Having found that the D&O Policy unambiguously excludes from coverage the FDIC's claims against Security Pacific's former directors and officers, we reverse the decision of the district court and remand with instructions to enter judgment in favor of BancInsure.

**REVERSED and REMANDED with instructions.**

**FDIC v. BancInsure, Case No. 14-56132**
**RAWLINSON, Circuit Judge, dissenting:**

I respectfully dissent. I agree with the district court judge that the "Regulatory Endorsement" superseded the regulatory coverage exclusion, thereby providing coverage for the claims made by the Federal Deposit Insurance Corporation (FDIC).

As relevant here, the applicable insurance policy contained an exclusion for any

> [c]laim by, or on behalf of, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee, or receiver of the Company except for . . . a shareholder's derivative action brought on behalf of the Company by one or more shareholders who are not Insured Persons and make a Claim without the cooperation or solicitation of any Insured Person or the Company.

However, the exclusion section of the policy was also amended by deleting the exclusion

> based in or upon any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency").
>
> This exclusion shall include, but not be limited to, any type of legal action which any such Agency may bring as receiver, conservator, trustee, liquidator or in any capacity, whether such action or proceeding is brought in the name of such Agency or by or on behalf of such

Agency in the name of any other entity or solely in the name of any third party . . .

Under California law, a policy provision is ambiguous if it may reasonably be subject to at least two interpretations. *See MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003), *as modified*. Insurance coverage is interpreted broadly, and exclusions are interpreted narrowly. *See id*. "[T]he burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language," without ambiguity. *Id.* (citation omitted).

Applying these precepts, a conclusion of ambiguity is apparent. Considering the "insured versus insured" exclusion discussed by the majority in the context of the amendment to the exclusion that specifically addresses actions brought by receivers, at least two interpretations come to mind. The first is the interpretation advanced by the majority— that the FDIC, as a successor entity to the defunct financial institution, is similarly barred by the "insured versus insured" exclusion. However, the majority ignores the equally plausible interpretation that the amendment to the exclusions specifically preserved claims brought by a receiver, more precisely those brought by a "regulatory . . . deposit insurance organization." The latter interpretation is entirely consistent with California caselaw holding that an endorsement expressly deleting an exclusion "supports an objectively reasonable expectation" of coverage. *American*

*Alternative Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1247 (2006). At a minimum, this interpretation, supported by California authority, creates an ambiguity that is resolved in favor of the insured and coverage. *See St. Paul Mercury Ins. Co. v. Hahn*, No. SACV 13-0424 AG (RNBx), 2014 WL 5369400 (C.D. Calif., Oct. 8, 2004) at *3-4 ("[T]he Insured v. Insured Exclusion is ambiguous when applied to the FDIC [and] California law mandates that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer.") (citations and internal quotation marks omitted). Coverage is particularly mandated when one keeps in mind that California courts construe coverage broadly, exclusions narrowly, and place the burden on insurers to "phrase . . . exclusions in clear and unmistakable language." *Mackinnon*, 31 Cal. 4th at 648.

I am not persuaded by the decision of the Tenth Circuit cited by the majority for one simple reason—in *BancInsure, Inc. v. FDIC*, 796 F.3d 1226 (10th Cir. 2015) *cert. denied sub nom McCaffree v. BancInsure*, 136 S. Ct. 2462 (June 13, 2016), the court applied Kansas law rather than California law. *See id*. at 1233. There is no indication in the Tenth Circuit's decision that Kansas courts have adopted the California approach treating an endorsement deleting an exclusion as adequate to "support an objectively reasonable expectation of coverage." *American Alt*., 135 Cal. App. 4th at 1247; *see also St. Paul Mercury*, 2014 WL 5369400 at *3-4 (finding an

ambiguity in the application of the "Insured v. Insured" exclusion to the FDIC).  The

district court got it right.  The FDIC was entitled to insurance coverage for its claim.

I respectfully dissent.