Filed 4/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COAST RESTAURANT GROUP, INC.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>AMGUARD INSURANCE COMPANY,<br><br>    Defendant and Respondent. | G061040<br><br>(Super. Ct. No. 30-2020-01153185)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria, Kristin Hobbs, and Reid Ehrlich-Quinn for Plaintiff and Appellant.

United Policyholders, Covington & Burling, Sabrina T. McGraw, Rani Gupta and Richard Z. Lee, as Amicus Curiae, on behalf of Appellant.

Simpson Thacher & Bartlett, Chet A. Kronenberg and Brooke Jarrett for Defendant and Respondent.

\*         \*         \*

Coast Restaurant Group appeals from a judgment of dismissal following the trial court's order sustaining respondent AmGUARD Insurance Company's demurrer to the operative complaint without leave to amend.  Appellant contends the court erred in sustaining the demurrer because it has shown that business income losses resulting from governmental orders prohibiting on-site dining at its restaurant due to the COVID-19 virus were covered under the relevant insurance policy.  As explained below, we conclude appellant has shown there is potential coverage under the policy, but respondent has shown that an exclusion in the policy applies to preclude coverage as a matter of law.  Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  *First Amended Complaint*

On April 28, 2021, appellant filed a first amended complaint (FAC), alleging causes of action for breach of implied covenant of good faith and fair dealing and breach of contract against respondent.[1]  The FAC alleged that appellant operates the Cedar Creek Inn, a restaurant in North Orange County, which offers a variety of fine food, an extensive wine list and craft beer, and live musical performances from Tuesday through Saturday.  Appellant obtained business interruption insurance from respondent, covering the period from March 30, 2019 to March 30, 2021.  Business interruption insurance "'protects against the loss of income and other losses caused by an interruption to the normal operations of the business.'"

The FAC further alleged that in January 2020, COVID-19, a coronavirus, was present in California, and on March 4, 2020, the Governor of California proclaimed a state of emergency "exist[ed] in California "'as a result of the threat of COVID-19.'""  On March 17, 2020, the Orange County health officer issued an order that, among other

---

[1]  Appellant also alleged a negligence cause of action against its insurance broker, which is not at issue in this appeal.

2

things, "prohibited restaurants from serving food on their premises and prohibited all gatherings of people." The next day, the county health officer issued an amended health order and uidance requiring "[a]ll restaurants and other business establishments that serve food shall close all onsite [*sic*] dining. Pickup, delivery and drive thru [*sic*] services may remain open. . . ." The FAC alleged the orders "forced [appellant] to shut its doors for in person dining and resulted in a loss of functional use of its premises and an interruption of its business."

The FAC alleged appellant submitted a claim for its business income loss. The FAC asserted that appellant "did not lose any business income as a result of virus contamination," but rather its "losses of business income were caused by, and a direct result of, government stay-at-home orders in California." However, respondent "abruptly, unreasonably and with a callous disregard for the interests of its insured, denied the claim in its entirety." Respondent's grounds for denying coverage were that appellant did not claim the property sustained any direct physical loss or damage and the virus exclusion under the policy would also bar coverage. The FAC alleged that respondent's actions breached the insurance contract and the related implied covenant of good faith and fair dealing.

The FAC attached a copy of the insurance policy. Under "Additional Coverages" for "Business Income," the policy provides: "'[w]e [respondent] will pay for the actual loss of [b]usiness [i]ncome you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.'" The policy defines "suspension" of operations as the "partial slowdown or complete cessation of your business activities" and "[t]hat a part of or all of the described premises is rendered untenantable." "'Period of restoration'" is defined as beginning "72 hours after the time of direct physical loss or damage" and ending on the earlier of "(a) [t]he date when the

3

property at the described premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality; or (b) [t]he date when business is resumed at a new permanent location." The policy limits payment for business income loss on "[r]esumption [o]f [o]perations," providing that business income loss will be reduced "to the extent you can resume your 'operations' in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere."

The policy defines "Covered Causes of Loss" as all "[r]isks of direct physical loss" except those specifically excluded in "Paragraph B. Exclusions in Section 1." Section 1 provides: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area." The relevant exclusions include: B.1.a.(1) "The enforcement of any ordinance or law: [¶] (a) Regulating the construction, use or repair of any property"; and B.1.j. (1) "Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Paragraph B, Section 2.b., provides that the insurer will not pay for loss or damage caused by "Consequential Losses," which are defined as "[d]elay, loss of use or loss of market."

The FAC also attached the governmental orders restricting on-site gatherings at restaurants. The March 17, 2020 order states: "All restaurants and other business establishments that serve food shall close all on-site dining . . . All food served shall be by delivery, or through pick-up or drive-thru." In Paragraph 4, the order states: "This Order is necessary to protect and preserve the public health from, and prevent, the increasing transmission of COVID-19 in California, and the significant risk of widespread introduction and transmission of COVID-19 into the County." The March 18, 2020 amended order, restricted the service of food to "delivery, pick-up or drive[]through," also provides that it was issued "to protect and preserve the public health

4

from, and prevent, the increasing transmission of COVID-19 in California, and the significant risk of widespread introduction and transmission of COVID-19 into the County."

B. *Demurrer*

Respondent demurred to the FAC. In the demurrer, respondent contended there was no breach of contract claim because the insurance policy does not cover "losses arising from the COVID-19 virus, including government[al] directives issued in response to the virus." Separately, respondent contended that appellant did not allege any "direct physical loss or damage to" the covered property because governmental orders limiting the use of respondent's property do not amount to "direct physical loss of or damage to property." Respondent further asserted the "Ordinance or Law" exclusion precludes coverage for "losses arising from government-imposed use restrictions." Respondent also asserted the claim for breach of the implied covenant of good faith and fair dealing should be dismissed because its denial decision is "consistent with the plain language of the [insurance policy] and supported by numerous recent cases denying similar COVID-19-related business interruption claims."

Appellant opposed the demurrer, arguing the insurance policy covers the loss of beneficial use or possession of the property as a "direct physical loss of . . . property," which occurred here because the governmental orders effectively deprived appellant of possession and use of its restaurant. Appellant also argued the policy's virus exclusion did not apply because under the efficient proximate cause doctrine where the loss is the product of two perils (the virus and the governmental orders), there is coverage if the predominating cause is a covered peril (the governmental orders) even if the non-covered peril (the virus) is the "triggering cause."

In reply, respondent argued the governmental orders did not cause direct physical loss of property because appellant did not lose physical possession of its property permanently. Additionally, respondent argued, appellant's loss of use claim is

5

barred by the policy's "Ordinance or Law" exclusion which excludes coverage for any ordinance or law "'[r]egulating the construction, use or repair of any property.'" Respondent also argued that the efficient proximate cause doctrine did not apply because the virus was the sole cause of loss.

On September 13, 2021, the trial court sustained without leave to amend the demurrer to the FAC. In its written ruling, the court did not determine whether appellant's claim for business loss was covered under the policy as a "risk of physical loss." Rather, it determined that the virus exclusion applies to deny any coverage, stating the "governmental orders affecting [appellant's] business operations, and ultimately loss of business income, was a result of the COVID-19 virus. In other words, . . . [respondent] properly denied coverage because the loss was 'indirectly' caused by the virus."

## II

### DISCUSSION

Appellant contends the trial court erred in sustaining respondent's demurrer without leave to amend. "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) In reviewing the sustaining of a demurrer, we address whether the results, and not the court's reasons, are correct. (*Perkin v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 492, 501.)

Resolution of this appeal requires the interpretation of appellant's insurance policy. "The principles governing the interpretation of insurance policies in California

6

are well settled. 'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] "If contractual language is clear and explicit, it governs." [Citation.] If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect "'the objectively reasonable expectations of the insured.'" [Citations.] "'Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer. [citation]'" (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321 (*Minkler*).)

"[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer. The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler*, *supra*, 49 Cal.4th at p. 322.) "The policy must be examined as a whole, and in context, to determine whether an ambiguity exists." (*Id*. at p. 322.) "It is black-letter insurance law that exclusions are only considered after it is established that coverage exists under the policy." (*Apple Annie, LLC v. Oregon Mutual Ins. Co*. (2022) 82 Cal.App.5th 919, 924.)

A. *Coverage Under the Insurance Policy*

Here, appellant has the burden of showing that its business income loss was within basic coverage. Accordingly, appellant must show the governmental orders prohibiting on-site dining is a "risk of physical loss" and that the orders resulted in "direct physical loss of or damage to the property." Appellant contends "direct physical loss" includes deprivation or dispossession of property even if the property has not been physically damaged or altered. Appellant's contention has merit.

"Words in an insurance policy, unless given special meanings by the policy itself, must be understood in their ordinary sense." (*Scott v. Continental Ins. Co*. (1996) 44 Cal.App.4th 24, 28.) The policy here does not define "direct physical loss" as a whole

7

or separately.  Thus, we may resort to dictionary definitions, taking care to "consider the policy context in which the word or term was used and attempt[ing] to put [our]self in the position of a layperson and understand how he or she might reasonably interpret the particular language."  (*Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1216.)

Webster's Third New International Dictionary (2002) defines

• "direct" as "marked by absence of an intervening agency, instrumentality, or influence: immediate";

• "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"; and

• "loss" as "failure to keep possession: deprivation," "act or fact of failing to gain, win, obtain or utilize," or "destruction, ruin, perdition."  (Webster's 3d New Internat. Dict. (2002) pp. 640, 1706, 1338.)

Based on the above dictionary definitions, the governmental orders at issue directly affected the property because there was no intervening cause.  The orders also physically affected the property because they affected how the physical space of the property and the physical objects (chairs, tables, etc.) in that space could or could not be used.  The remaining issue is whether the orders caused a "loss."  We conclude that appellant suffered a covered loss under the policy because the governmental restrictions in this case deprived the appellant of important property rights in the covered property.

A governmental order that temporarily deprives the insured of possession and use of covered property can qualify as a "direct physical loss."  *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239 (*American Alternative*) is illustrative.  There, the insured obtained coverage that "'promised indemnity for any 'physical damage' to [a specific] aircraft.  The term 'physical damage' was specifically defined to include a "direct and accidental physical loss" of the aircraft."  (*Id.* at p. 1246.)  A county sheriff seized the aircraft on April 2, 2003, as part of a civil forfeiture proceeding, before returning the aircraft on May 22, 2003, after a court found no

probable cause to seize the airplane.  (*Id.* at p. 1243.)  The appellate court concluded that, "[o]n its face, such a coverage promise could reasonably extend to a governmental seizure or confiscation."  (*Id.* at p. 1246.)  Similarly, here, the governmental orders temporarily deprived appellant of its right to use the covered property for on-site dining, which would be a "loss" under the coverage provisions.

Respondent argues *American Alternative* is distinguishable because in that case there was an exclusion precluding coverage for seizure and confiscation, but the insured purchased an endorsement deleting that exclusion.  Respondent also argues interpreting "loss" to include loss of use contradicts provisions in the policy excluding loss of use.  For example, the policy excludes "loss or damage caused directly or indirectly by . . . enforcement of any ordinance or law . . . [that] [r]egulates the construction, use or repair of any property[.]"  It also excludes "[c]onsequential losses," including "delay, loss of use or loss of market."  Those arguments, however, persuade us that our interpretation is correct.  As the appellate court in *American Alternative* explained, "[the insurer] presumably . . . construed the policy [as applying to governmental seizures and confiscation] since there was an explicit exclusion included in the policy precluding such coverage.  The insureds, however, had purchased an endorsement expressly deleting that exclusion.  In our view, this supports an objectively reasonable expectation that [the policy] provided coverage for a governmental seizure." (*American Alternative*, *supra*, 135 Cal.App.4th at pp. 1246-1247.)  Similarly, here, the explicit exclusion for governmental orders restricting use of covered property supports our interpretation that loss of use is covered under the policy.[2]

Respondent contends our interpretation that loss of use is covered is inconsistent with the policy's definition of the term "period of restoration."  As noted, the policy only covers business income loss from a "direct physical loss" during "the period

_____

[2]  Whether respondent met its burden to show that one or more of those exclusions apply to deny coverage is a separate issue that will be discussed in the next section.

9

of restoration." "Period of restoration" is defined as beginning "72 hours after the time of direct physical loss or damage" and ending on the earlier of "(a) [t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "(b) [t]he date when business is resumed at a new permanent location." Appellant argues that because there is no ending date for governmental orders restricting use under the above policy definitions, interpreting those orders as creating a "loss" would render the "period of restoration" superfluous. We disagree. First, the "period of restoration" only provides one method of calculating the duration of coverage, and does not purport to define the scope of coverage. Second, the ending date provisions in the "period of restoration" are not superfluous because they provide an ending date calculation for those cases where covered property is "damage[d]." In cases of a "loss" arising from governmental-use restrictions, those provisions would result in an open-ended "period of restoration" because there would be no ending date.[3]

Respondent also contends *American Alternative* is factually distinguishable because there the insured "lost actual possession of and access to an aircraft when it was confiscated . . . not just the inability to use property in a particular way." The policy here, however, does not distinguish between a partial loss or a total loss. Thus, even if appellant's deprivation here is less than the insured's deprivation in *American Alternative*, there is still a "loss" under the policy, although the amount of the loss would be different.

---

[3] The open-ended "period of restoration," however, would not create unlimited coverage because the "period of restoration" only provides one method of calculating the duration of coverage. As noted, the policy limits payment for business income loss upon "[r]esumption [o]f [o]perations," providing that business income loss will be reduced "to the extent you can resume your 'operations' in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere." Thus, the insurer must provide coverage until the insured is able to resume full operations.

10

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.* (2010) 187 Cal.App.4th 766 (*MRI Healthcare*) does not persuade us that our interpretation that "a direct physical loss" can include loss of use, even if the subject property is not physically altered or damaged, is incorrect. In *MRI Healthcare*, the insured obtained coverage for "accidental direct physical loss to business personal property." (*Id.* at p. 771, italics omitted.) After storms damaged the roof over the room housing the insured's magnetic resonance imaging (MRI) machine, the insured demagnetized the MRI machine to allow for the roof repairs. However, when the insured tried to remagnetize the machine, it could not do so and had to extensively repair the machine. (*Id.* at p. 770.) The appellate court concluded the insured could not recover the amount it expended to repair the MRI machine and the income loss sustained while the machine was inoperable because there was no "accidental direct physical loss" to the MRI machine. (*Id.* at p. 778.) In reaching its conclusion, the appellate court discussed the term "physical loss." The court first noted that a well-respected treatise, Couch on Insurance, states that the "physical loss or damage" coverage trigger is "[c]learly" met when an item of tangible property has been "'physically altered,'" but "serious questions crop up in instances when the structure of the property itself is unchanged to the naked eye and the insured claims its usefulness for its normal purposes has been destroyed or reduced." (*Id.* at pp. 778-779, quoting 10A Couch on Insurance (3d ed. 2010) § 148:46, p. 148-80.) The appellate court then concluded that "[f]or there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term." (*MRI Healthcare*, *supra*, 187 Cal.App.4th at p. 780.)[4]

---

[4] The appellate court also found there was no coverage because the undisputed facts showed that "the [demagnetization] of the MRI machine was not 'accidental.'" (*MRI Healthcare*, *supra*, 187 Cal.App.4th at pp. 780-781.)

11

*MRI Healthcare*, is factually and legally distinguishable. First, *MRI Healthcare* involved business personal property, not real property as is the case here, and there was no governmental order involved. Second, the insuring clause in *MRI Healthcare* only covered "accidental direct physical loss," without any mention of "damage." The conclusion there was no "loss" was directly attributed to lack of "damage." (See *id.*, 187 Cal.App.4th at pp. 778-780 ["[f]or there to be a 'loss' . . . it must have been 'damaged' . . . ."].) It was reasonable for the appellate court in *MRI Healthcare* to include "damage" as an aspect of "loss" because "damage" was not specifically included in the insuring clause. However, where "loss" and "damage" are both included in the insuring clause, as in the policy here, "loss" must mean something different from "damage." Thus, the *MRI Healthcare* court's reasoning is not helpful for this case.

Finally, while physical alteration to covered property could trigger coverage under a "physical loss or damage" insuring provision, that is not the only possible trigger for coverage. As discussed above, deprivation or dispossession also would trigger coverage, even if the property has not been physically altered. (See *American Alternative*, *supra*, 135 Cal.App.4th at pp. 1246-1247.) In sum, we are not persuaded by *MRI Healthcare* and the numerous cases citing its reasoning that "loss" of property requires physical alteration or damage to covered property. We conclude appellant has met its burden to show there can be coverage under the policy for governmental orders resulting in loss of use.[5]

---

[5] We decline to consider the issues addressed in amicus curiae's briefing because they are not relevant to this case. Amicus curiae argues that COVID-19 itself can cause "direct physical loss," but in this case appellant alleged that the governmental orders, not the virus itself, caused direct physical loss.

12

B. *Exclusions Under the Insurance Policy*

Having concluded that appellant has demonstrated potential for coverage under the terms of the policy, we turn to whether respondent has shown an exclusion applies to deny coverage. In its demurrer, respondent argued two exclusions in the policy apply to this case: (1) the ordinance or law exclusion, and (2) the virus exclusion. We address each exclusion in turn.

### 1. *The Ordinance or Law Exclusion*

Under the ordinance or law exclusion, "loss or damage caused directly or indirectly by . . . enforcement of any ordinance or law . . . [that regulates] the construction, use or repair of any property" are not covered. The governmental orders at issue clearly regulate the use of covered property by prohibiting on-site dining. Accordingly, the ordinance or law exclusion would apply to preclude coverage.

Appellant contends we should apply the rule of *noscitur a sociis* to interpret the ordinance or law exclusion to apply only to governmental orders that regulate "the physical structural integrity of the property" because the term "use" is part of the phrase "construction, use, or repair." *Noscitur a sociis* means "'a word takes meaning from the company it keeps. [Citation]'" (*People v. Hernandez* (2017) 10 Cal.App.5th 192, 200.) Under this rule, "'"[a] word of uncertain meaning may be known from its associates and its meaning 'enlarged or restrained by reference to the object of the whole clause in which it is used.' [Citation.]" [Citation.]' [Citation.] "'"In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list. [Citations]'"" (*Ibid*.) We decline to do so because nothing suggests the term "use" is limited to structural integrity even when interpreted in connection with "construction" and "repair." For example, a governmental order regulating the number of occupancy or the permitted use of properties under applicable zoning laws does not necessarily relate to

13

the structural integrity of a building, but could affect construction, use or repair of the building.

At oral argument, appellant argued interpreting the ordinance or law exclusion as applying to loss of use from governmental orders would cause the basic coverage to be illusory. We disagree. "A contract is illusory if performance is 'conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion.'" (*Forecast Homes, Inc. v. Steadfast Ins. Co*. (2010) 181 Cal.App.4th 1466, 1483, quoting *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 15.) In this case, respondent would be obliged to cover business income losses from a loss of use, except from governmental orders restricting use, which is an event not within respondent's control. Thus, the policy is not illusory.

### 2. *The Virus Exclusion*

In the alternative, the virus exclusion applies to deny appellant coverage for its business income loss. As detailed above, the policy does not cover "loss or damage caused directly or indirectly by" "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." As the FAC acknowledges, COVID-19, a coronavirus, is a "virus." It is undisputed that COVID-19 "induces or is capable of inducing physical distress or illness." In addition, the governmental orders at issue specifically state that they were promulgated "to protect and preserve the public health from, and prevent, the increasing transmission of COVID-19 in California, and the significant risk of widespread introduction and transmission of COVID-19 into the County." Thus, at a minimum, COVID-19 triggered the governmental orders and it "indirectly" caused appellant's business income loss. The virus exclusion thus applies here.

14

Appellant argues that even if the virus exception applies, the efficient proximate cause doctrine would apply to provide coverage. Under the efficient proximate cause doctrine, "[w]hen a loss is caused by a combination of a covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss," but "the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause." (*State Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1131-1132.) The efficient proximate cause of a loss is the "predominant" or "most important" cause of the loss. (*Julian v. Hartford Underwriters Ins. Co*. (2005) 35 Cal.4th 747, 754.)

The efficient proximate cause doctrine does not apply because the doctrine requires a combination of covered and specifically excluded risks. Both the virus and the governmental orders here are specifically excluded. Additionally, the two possible causes of appellant's business income loss are not conceptually distinct perils. In *Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, this court explained that "the [efficient proximate] cause doctrine applies only when two or more conceptually distinct perils combine to cause the loss." (*Id.* at p. 1409.) In other words, the perils must be such that "'they could each, under some circumstances, have occurred independently of the other and caused damage.'" (*Ibid.*, quoting *Finn v. Continental Ins. Co*. (1990) 218 Cal.App.3d 69, 72.) Here, COVID-19 and the governmental orders are inextricably intertwined. The governmental orders could not under any circumstance have occurred independent of COVID-19. Thus, the governmental orders are not a conceptually distinct peril, and the efficient proximate cause doctrine does not apply. (See also *Chadwick v. Fire Ins. Exchange* (1993) 17 Cal.App.4th 1112, 1117 ["When, however, the evidence

15

shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application."].) The trial court properly sustained the demurrer.

## III

### DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.


DELANEY, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.


16