Filed 11/6/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SEQUOIA EVLESHIN et al., | H051869 |
| Plaintiffs and Respondents, | (Santa Cruz County Super. Ct. No. 21CV01686) |
| v. | |
| STEPHEN MEYER et al., | |
| Defendants and Appellants. | |

In August 2019, plaintiffs and respondents Sequoia Evleshin and Nicole Evleshin (collectively, the Evleshins) purchased a Santa Cruz home with wooded acreage (the Property). The sellers were defendants and appellants Stephen Meyer and Karin Meyer (collectively, the Meyers). The transaction was governed by a standard form Residential Purchase Agreement (the Agreement) providing that the prevailing party to an action would be entitled to recover its reasonable attorney fees. The parties also "agree[d] to mediate any dispute or claim arising . . . out of this Agreement, or any resulting transaction, before resorting to arbitration or court action."

Disputes arose after the sale, and the Evleshins sued the Meyers for breach of contract and fraud. After a three-day trial, the court announced its decision in favor of the Meyers on the first amended complaint of the Evleshins and on the Meyers' cross-complaint. A judgment was filed May 9, 2023, in which the court found that the Meyers were the prevailing parties under the Agreement and were "entitled to recover their

attorney fees and costs of suit as permitted by the subject contract, in an amount to be determined in post-trial proceedings."

The Meyers filed a postjudgment motion for attorney fees and costs. The trial court denied the motion for attorney fees, and it denied without prejudice the motion for costs. The court determined that the Meyers were barred from recovery of attorney fees, concluding that "even though the [Meyers] are the 'prevailing parties' their refusal to mediate, per the terms of the contract, denies them the recovery of attorney fees." In so holding, the court relied upon the following language of the Agreement: "If, for any dispute or claim to which this paragraph applies, any Party[,] . . . before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action."

The Meyers challenge the order denying their motion for attorney fees. First, they contend that the trial court improperly "[r]evers[ed] a final judgment on the merits." The Meyers assert that the court violated principles of res judicata because the judgment had determined that they were the prevailing parties entitled to attorney fees, and it represented a final decision that the Meyers had not refused to mediate the case. Second, the Meyers argue that the trial court erred in finding that, under the terms of the contract, their pre-suit refusal to mediate—notwithstanding their later expressed willingness to mediate before commencement of the present action—barred their recovery despite their having prevailed in the action.

We reject the Meyers' first challenge. The trial court's statement in the judgment that the Meyers were the prevailing parties entitled to an award of attorney fees in postjudgment proceedings was interlocutory in nature and not a final judgment on the attorney fees issue. (See *P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053 (*P R Burke*).) It was thus subject to modification by the trial court in postjudgment proceedings.

2

But we conclude that the Meyers' second challenge has merit. In our de novo review of the legal basis for determining an award of attorney fees (see *Cullen v. Corwin* (2012) 206 Cal.App.4th 1074, 1078 (*Cullen*)), we conclude that the trial court erred. We hold that the fact that the Meyers initially refused the Evleshins' request to mediate the dispute, of itself, did not preclude their recovery of prevailing-party attorney fees under the Agreement. There is evidence in the record that would support the conclusion that, after the Meyers' initial refusal to mediate, they (still before the Evleshins filed suit) offered to mediate the dispute. Based upon our independent determination in construing the contract (see *R. J. Kuhl Corp. v. Sullivan* (1993) 13 Cal.App.4th 1589, 1599 (*R. J. Kuhl Corp.*)), we conclude as follows: If, in fact, the Meyers offered to mediate the dispute before the action was filed by the Evleshins, the Meyers did not forfeit their right to prevailing-party attorney fees due to their initial refusal to mediate. Accordingly, we will reverse the postjudgment order of August 8, 2023, and we will remand the case for further proceedings consistent with this opinion on the Meyers' motion for attorney fees.

## I.     PROCEDURAL BACKGROUND

### A.     Pleadings

The Evleshins filed this lawsuit against the Meyers on July 12, 2021. Their first amended complaint was filed on July 13 and was personally served on the Meyers on July 21.[1]

---

[1] The record is unclear as to the existence of a valid pleading that amended the Evleshins' first amended complaint. They filed a motion to amend the first amended complaint to "state allegations and particular causes of action which have arisen as a result of defendants['] conduct after the filing of the First Amended Complaint." Although the Evleshins indicated in the motion that they were attaching a proposed second amended complaint, the document attached is labeled "APPENDIX OF PROPOSED CHANGES." The court granted the motion to amend. There is no *filed* second amended complaint that is part of the record on file. The trial court, in the minute order (in which its ruling after trial was announced) and in the subsequent (continued)

3

The Evleshins alleged four causes of action in the first amended complaint: breach of the Agreement; fraud and deceit; intentional concealment of material facts; and negligent misrepresentation.  They alleged, inter alia, that the Meyers breached the Agreement by (1) failing to disclose all material facts "relating to the title, property, and the report"; (2) failing to disclose facts related to the septic system; (3) failing to vacate the Property at close of escrow; (4) delivering the Property with rugs in damaged condition; and (5) failing to disclose material facts regarding the harvest of lumber on the Property.

The Agreement contained a provision for recovery of prevailing-party attorney fees as follows:

"**25. ATTORNEY FEES:**  In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A."

The Agreement also contained a paragraph concerning the mediation of disputes that provided (in pertinent part):

"**22.  . . . [¶]  A.** . . .  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. . . .  If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be

---

judgment, referred only to the Evleshins' first amended complaint; the court did not mention any amended pleading.  Accordingly, based on this record, we treat the matter as having been tried and adjudicated on the Evleshins' first amended complaint.

4

entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action."[2]

On November 5, 2021, the Meyers filed an answer to the first amended complaint. The same day, the Meyers filed a cross-complaint against the Evleshins, which is not part of the appellate record.

## B. Trial and Judgment

There was an unreported three-day court trial in May 2023. The court, as recited in the minutes of the trial: (1) ruled against the Evleshins on all causes of action of the first amended complaint; (2) made specific findings that the Meyers satisfied all duties of disclosure, they did not conceal any information from the Evleshins regarding logging operations or easements, and the Evleshins did not present any credible evidence of damages; (3) held that judgment should be rendered in favor of the Meyers on all causes of action the Evleshins alleged; (4) held that the Meyers were entitled to judgment of specific performance on their cross-complaint, concluding that they should receive all profits from logging operations on the Property originally scheduled for 2020; (5) found that the Meyers, as defendants and cross-complainants, were the prevailing parties; and (6) found that the Meyers were entitled to attorney fees and costs to be established in post-trial proceedings.

Thereafter, on May 9, 2023, the court entered judgment in favor of the Meyers. The judgment mirrored the court's findings reflected in the court minutes, including its finding that the Meyers were the prevailing parties, and, as such, were "entitled to recover their attorney fees and costs of suit as permitted by the subject contract, in an amount to be determined in post-trial proceedings."

---

[2] We have excerpted paragraph 22A to include a portion of its first sentence and the entirety of the fourth sentence.

### C. Motion for Attorney Fees and Costs

The Meyers, as prevailing parties, filed a motion for attorney fees and costs, seeking fees of $111,324, and costs of $3,340.69. They argued that the Evleshins had admitted in the litigation that the Meyers had made a pre-suit request for mediation as required under the Agreement and that the Evleshins had refused that request.[3]

The Evleshins opposed the motion. They argued that the Meyers were not entitled to fees and costs, inter alia, because: (1) the Meyers "resorted to 'court action' by filing a motion to appoint a referee without first mediating [their] claims" (that were later asserted in their cross-complaint), and this failure to mediate precluded their recovery of attorney fees; (2) the Meyers' defense of the Evleshins' claims was "entirely in tort" and not subject to recovery in contract under the Agreement; and (3) the attorney fees claimed were not reasonable.

The posttrial motion was not decided by the judicial officer who had presided over the trial and had signed the judgment. In its tentative ruling, the court concluded that, notwithstanding that the Meyers were the prevailing parties in the litigation, "their refusal to mediate, per the terms of the contract, denies them the recovery of attorney fees." In so holding, the court relied on *Frei v. Davey* (2004) 124 Cal.App.4th 1506 (*Frei*). The trial court also concluded in its tentative ruling that the Meyers' motion for costs should be denied without prejudice, reasoning that, as a procedural matter, the Meyers, in failing to file a memorandum of costs, had not complied with rule 3.1700(a)(1) of the California Rules of Court.[4] After a hearing on June 29, 2023, the court adopted its tentative ruling.

---

[3] The Meyers asserted in their fee motion that during the lawsuit, in a declaration of Nicole Evleshin in support of the Evleshins' motion for summary adjudication, "[The Evleshins] admit[ted] that [the Meyers] requested to mediate the claims in this dispute on July 10, 2021—but [the Evleshins] rejected the request because they were 'suspicious of the odd nature of the letter.' "

[4] All further rule references are to the California Rules of Court.

A formal order was filed on August 8, 2023, denying the motion for attorney fees and denying without prejudice the motion for costs.

On February 2, 2024, the Meyers filed a notice of appeal from the order denying their motion for attorney fees and costs.[5]

## II.    DISCUSSION

### A.    Motion for Attorney Fees:  Standard of Review

A posttrial order on a motion for attorney fees is ordinarily reviewed for abuse of discretion.  (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)  However, " '[a]n appellate court reviews a determination of the legal basis for an award of attorney fees independently as a question of law.'  [Citation.]" (*Lange v. Schilling* (2008) 163 Cal.App.4th 1412, 1416 (*Lange*).)  Thus, we independently review any subsidiary legal issues (including the meaning of statutes and contracts) as well as the application of contractual or statutory terms to undisputed facts.  (See *Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596, 604 (*Reyes*) [where consideration of order denying attorney fee request concerns " ' "[i]ssues of statutory construction and contract interpretation that do not turn on extrinsic evidence," ' " independent review is appropriate]; *Khan v. Shim* (2016) 7 Cal.App.5th 49, 55 ["interpretation of the contractual attorney fee provision . . . for which neither party has offered extrinsic evidence as an aid in interpretation" is reviewed de novo].)

Here, we are concerned with the trial court's determination that, because the Meyers initially rejected the Evleshins' pre-suit request to mediate, they were precluded under the Agreement from recovery of their prevailing-party attorney fees.  In so holding, the trial court relied on *Frei*, *supra*, 124 Cal.App.4th 1506.  We therefore review the trial

---

[5] The Meyers indicated in the notice of appeal that, in addition to the postjudgment order, they were also appealing from the judgment.  However, the Meyers do not present a challenge to the judgment in their appellate briefs.  At oral argument, counsel for the Meyers confirmed that the appeal was solely from the postjudgment order denying attorney fees and costs.

7

court's legal basis for denying the Meyers' motion for attorney fees, a question of law which is subject to our independent review. (See *Lange*, *supra*, 163 Cal.App.4th at p. 1416; see also *Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 431 (*Leamon*).) Moreover, our resolution of this appeal requires us to interpret the Agreement. Unless a contract's meaning turns on extrinsic evidence that is in conflict—which is not the case here—construction of a written contract is a matter of law for independent determination by the appellate court. (See *R. J. Kuhl Corp.*, *supra*, 13 Cal.App.4th at p. 1599.)[6]

### B.        Whether Judgment Compelled Granting of Attorney Fee Motion

The Meyers challenge the postjudgment order denying attorney fees on the basis that the judicial officer who rendered the decision "[r]evers[ed] a final judgment on the merits" previously made by another judicial officer. The Meyers contend that the finding in the postjudgment order that they had refused mediation and were thus barred from recovering attorney fees was precluded under principles of res judicata because (1) there had been a final judgment on the merits, and (2) the issue decided in the judgment (i.e., the Meyers' alleged refusal to mediate) was identical to the one presented in the subsequent fee motion.[7] The Meyers' position is without merit.

Under the circumstances presented here, the law is clear that there was no final judgment that mandated a subsequent postjudgment determination that the Meyers were entitled to an award of attorney fees. The trial judge ruled that the Meyers were the prevailing parties and, as such, were entitled to attorney fees and costs under the Agreement "in an amount to be determined in post-trial proceedings." While this

---

[6] We therefore disagree with the Evleshins' contention that the standard of review governing this appeal is whether the trial court abused its discretion in denying the Meyers' attorney fee motion.

[7] The third element of res judicata mentioned by the Meyers —whether "the party against whom the principle is invoked [was] a party or in privity with a party to the prior adjudication" (*Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1534)—was obviously satisfied and need not be discussed further.

8

language in the judgment appears to be definitive and final except for reserving for a future hearing a determination of the amount awardable, the judgment was, in fact interlocutory on this issue of the Meyers' claim for fees and costs.

*P R Burke*, *supra*, 98 Cal.App.4th 1047 is instructive. There, the general contractor, P R Burke Corp. (Contractor), after being sued by a subcontractor, cross-complained against the Victor Valley Wastewater Reclamation Authority (Owner) for indemnity. (*Id.* at p. 1049-1051.) After a court trial in which the issue of the right to attorney fees was not mentioned (except in the context of introducing into evidence the contract containing an attorney fees provision), the trial court issued a statement of decision in which the court found against Contractor and in favor of Owner, indicating that Owner " 'shall be entitled to its costs and attorney's fees as provided in the parties' contract.' " (*Id.* at p. 1051.) The court thereafter entered judgment in Owner's favor, indicating that it " 'shall be entitled to its costs and attorney's fees.' " (*Ibid.*) Owner then filed an attorney fees motion, asserting that the court had already determined its entitlement to an award and the only issue remaining was to assess the fee amount. (*Ibid.*) Contractor challenged the reasonableness of the amount of fees claimed, and it also argued the award of fees was against public policy. (*Ibid.*) The trial court awarded attorney fees in the amount requested by Owner. (*Id.* at p. 1052.)

On appeal, Owner sought to limit Contractor's challenge to the fee order to the determination of the fee amount, arguing that any claim that the trial court erred in finding an entitlement to fees was not cognizable in an appeal of the postjudgment order. (*P R Burke*, *supra*, 98 Cal.App.4th at p. 1052.) The appellate court disagreed. It noted that "if a judgment determines that a party is entitled to attorney's fees but does not determine the amount, that portion of the judgment is nonfinal and nonappealable." (*Id.* at p. 1053.) Thus, the *P R Burke* court concluded that the portion of the judgment

9

providing that Owner " 'shall be entitled to . . . attorney's fees' was nonfinal." (*Id.* at p. 1054.)  It held:  "[A]n order determining the entitlement to attorney's fees, but not the amount of the fee award, is interlocutory.  This is true even if such an order is contained in what is otherwise an appealable judgment.  It follows that, in an appeal from a postjudgment order awarding attorney's fees, we may review the entitlement to, as well as the amount of, the fees awarded." (*Id.* at p. 1055.)

Here, as in *P R Burke*, the portion of the judgment indicating the trial court's finding that the Meyers were the prevailing parties entitled to recover their attorney fees—leaving for a future determination of the amount properly awardable—was interlocutory and thus nonfinal.  (See *P R Burke*, *supra*, 98 Cal.App.4th at p. 1053.)  This meant not only that the judgment on this issue was not appealable.  It also meant that the order finding entitlement to fees contained in the judgment was subject to later modification by the trial court.  "An interlocutory order or judgment has two characteristic features:  It is not final for purposes of appeal, and is also *not final in the trial court, when it may be modified after further evidence or law has been considered.* [Citation.]" (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 449, italics added (*Yeboah*).)

The Meyers contend, however, that during the trial, the parties argued, and the trial judge addressed, the specific issues concerning the Evleshins' allegations that the Meyers refused to mediate the dispute.  The argument suggests that the trial court specifically considered the mediation issue and ruled against the Evleshins' contention that the Meyers had refused to mediate the dispute.  The trial proceedings were unreported.  The record does not support the Meyers' contention that issues concerning their alleged failure to mediate were raised during trial or ruled on by the trial judge.  The only trial record available consists of the clerk's minutes of the trial and the judgment; neither the minutes nor the judgment refers to the Meyers' alleged failure to mediate the

10

dispute. We therefore reject the Meyers' contention that the question of whether they refused to mediate the dispute before the action was filed (thus, precluding them from recovering attorney fees) was heard and decided during the trial.

Accordingly, there is no merit to the Meyers' contention that the judgment constituted a final determination on the issue of their entitlement to attorney fees that precluded the court from considering the issue in deciding the Meyers' postjudgment motion for attorney fees. The position of the trial judge as stated in the judgment concerning the Meyers' entitlement to attorney fees and costs was interlocutory in nature. (See *P R Burke*, *supra*, 98 Cal.App.4th at p. 1053.) It was subject to potential modification by the trial court. (See *Yeboah*, *supra*, 128 Cal.App.4th at p. 449.) Furthermore, principles of former adjudication did not apply to bar the court from deciding in the postjudgment order that the refusal to mediate acted as a bar to the Meyers' recovery of attorney fees to which they would otherwise be entitled as prevailing parties.

**C.    Whether Mediation Refusal Resulted in Forfeiture of The Meyers' Claim for Prevailing-Party Attorney Fees**

*1.    Contentions and Evidentiary Background*

The Meyers, in asserting that the trial court erred in denying their motion, challenge the court's rationale: namely, that because they had initially refused to mediate the dispute, they were barred under the Agreement from recovering prevailing-party attorney fees. The Meyers argue that, although they had initially rejected the Evleshins' prelitigation request for mediation, the Meyers later (and, importantly, before litigation commenced) advised the Evleshins of their willingness to mediate. Under these circumstances, the Meyers contend, the court erred in concluding that their initial refusal to mediate caused their irrevocable forfeiture of the right to prevailing-party attorney fees.

11

The Evleshins respond that the trial court did not err in denying the motion for attorney fees. They assert that the court properly found, "based on the evidence presented, that the Meyers had flatly rejected the Evleshins' request to mediate their dispute. Pursuant to paragraph 22.A of the [Agreement] . . . , the Meyers were therefore not entitled to recover their fees, despite being the prevailing parties in the action."

The relevant language of the Agreement appears in the first and fourth sentences of paragraph 22A. The first sentence reads: "The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to . . . court action. . . ." The fourth sentence provides: "*If, for any dispute or claim to which this paragraph applies, any Party* (i) commences an action without first attempting to resolve the matter through mediation, or (ii) *before commencement of an action, refuses to mediate after a request has been made*, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action." (Italics added.) (Hereafter, we will refer to this language in the fourth sentence of paragraph 22A as the fee disentitlement provision.)

The undisputed facts presented below were that: (1) before the Evleshins filed their lawsuit, they requested that the Meyers mediate their claims under the Agreement; (2) the Meyers rejected that request; (3) approximately six weeks later—and also *before* the Evleshins filed the action, the Meyers advised that circumstances (relating to timber operations) had changed, "the urgency for proceeding . . . [was] reduced," and there was "time for both the mediation [the Evleeshins] state[d] that [they] wish[ed] to pursue and/or the arbitration"; (4) two days later, the Evleshins filed suit (serving it on the Meyers one week later); and (5) two days after bringing suit, the Evleshins rejected the Meyers' request to mediate the Evleshins' claims. The chronology of events concerning the mediation issue is:

12

| | |
|---|---|
| 05/15/21 | The Evleshins make demand on the Meyers for "mediation as required by the standard purchase agreement executed by all parties to the purchase and sale of the property. . . ." The Evleshins seek mediation to address their claims related to easements, septic system, water damage, carpet damage, holdover occupancy, and the Meyers' alleged representations concerning logging operations. |
| 05/31/21 | The Meyers, through counsel, reject the Evleshins' mediation demand due to the Evleshins' alleged interference with logging efforts on the Property. The Meyers allege that the Evleshins, by refusing access to the Property for logging, had anticipatorily breached the contract.[8] |
| 07/10/21 | The Meyers, through counsel, advise the Evleshins that because logging in 2021 had become unlikely, "the urgency for proceeding now is reduced. This would permit the time for both the mediation you state that you wish to pursue and/or the arbitration." The Meyers' counsel inquires whether the Evleshins wish "to agree to either mediation or proceed directly to arbitration." |
| 07/12/21 | The Evleshins file lawsuit. |
| 07/13/21 | The Evleshins file first amended complaint. |

---

[8] The Meyers' response to the Evleshins' demand for mediation read: "Mediation takes time and can be expensive. Such delays damage the sellers' economic position and the position of others with regard to the logging operation, even including the realization of lower timber prices. This being the case, the Sellers have a legal duty under contract law to mitigate their damages when faced with the unexcused breach of the other party, you. The wish to avoid losing the right to be assured their prevailing legal costs if first mediated is more than offset by the much greater economic loss they may suffer through delays of the mediation process. . . ."

13

07/14/21    The Evleshins send an e-mail to the Meyers' attorney, asking whether there are issues (claims by the Meyers against the Evleshins) that the Meyers want to mediate. The Evleshins state, however, they are not interested in mediating their claims against the Meyers: "[We] are no longer interested in mediating our claims against the [Meyers] after they rejected our mediation request[. B]ecause we are clearly at an impasse; we don't see the utility in spending time, money, and energy on issues which won't be resolved through mediation."

07/19/21    The Meyers, through counsel, confirm that the Evleshins have rejected mediation after they had previously requested it.

07/21/21    The Meyers are served with summons and first amended complaint.

11/05/21    The Meyers file their cross-complaint together with their answer to first amended complaint.

The trial court, in its recital of the relevant facts in the tentative decision, noted: "[T]he Evleshins first requested mediation in May 2021, prior to instituting this instant action, which was refused by the Meyers. (Though the door to mediation was re-opened in July 2021 by the Meyers.)" The court also indicated in its recitation of facts that on July 14, 2021,[9] Sequoia Evleshin responded to the July 10 communication of the Meyers' counsel, who had indicated that circumstances had changed and there was time for mediation; Mr. Evleshin stated that " '[his] wife and [he were] no longer interested in mediating [their] claims against the [Meyers]. . . .' " The trial court, in concluding that the Agreement precluded the Meyers from recovering prevailing-party attorney fees

_____

[9] The court incorrectly stated in its tentative ruling that the date of Mr. Evleshin's communication was July 10, 2021. The court referred to the e-mail, an exhibit to the Evleshins' opposition, which was in fact dated July 14, 2021.

14

because they had refused to mediate in response to the Evleshins' May 2021 request, relied on, and quoted from, *Frei, supra*, 124 Cal.App.4th at p. 1520, as follows: " 'A party refusing a request to mediate a dispute that ripens into litigation may not recover attorney fees at the conclusion of the litigation, even if that party is the prevailing party.' "

## 2. *Interpretation of the Agreement (Paragraph 22A)*

### a. Contract Interpretation Generally

It is clear from the foregoing that the issue that must be resolved here is the meaning of the language in the Agreement (paragraph 22A, fourth sentence) that forecloses the right to prevailing-party attorney fees (granted under paragraph 25) for ". . . any Party [who] (i) commences an action without first attempting to resolve the matter through mediation, or (ii) *before commencement of an action, refuses to mediate* [a dispute arising out of the Agreement] *after a request has been made. . . .*" (Italics added.) We also construe this language in light of the first sentence of paragraph 22A, which provides: "The parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to . . . court action. . . ." We review familiar principles of contract interpretation before addressing the language in the Agreement.

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.]" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; see also Civ. Code, § 1636 ["[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful"].) "Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.]" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 (*AIU Ins. Co.*); see also Civ. Code, § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained

from the writing alone, if possible; subject, however, to the other provisions of this title"].) " 'If contractual language is clear and explicit, it governs.' [Citation.]" (*Foster-Gardner, Inc. v. National Union Fire* Ins. Co. (1998) 18 Cal.4th 857, 868.)

An appellate court "consider[s] the contract as a whole and interpret[s] the language in context, rather than interpret a provision in isolation. [Citation.] . . . If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. [Citation.]" (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245 (*American Alternative Ins.*).) But " '[e]ven if one provision of a contract is clear and explicit, it does not follow that that portion alone must govern its interpretation; the whole of the contract must be taken together so as to give effect to every part.' [Citation.] 'An interpretation which renders part of the instrument to be surplusage should be avoided.' [Citation.]" (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 799.)

In interpreting a contract, "[t]he threshold question is whether the contract is ambiguous—that is, reasonably susceptible to more than one interpretation. [Citation.]" (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 389 (*Scheenstra*).) A contract that may be subject to two different interpretations should be construed in a manner " 'that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity.' [Citation.]" (*Canyon Vineyard Estates I, LLC v. DeJoria* (2022) 78 Cal.App.5th 995, 1003 (*DeJoria*).)

### b.    The Agreement

In this case, there was no extrinsic evidence presented below concerning the

16

parties' intentions with respect to paragraph 22A.[10] We must, therefore, if possible, infer those intentions from the language of the Agreement itself. (See *AIU Ins. Co.*, *supra*, 51 Cal.3d at p. 822.) And we do not interpret the fee disentitlement provision in isolation; instead, we consider it in context as part of the contract taken as a whole. (See *American Alternative Ins.*, *supra*, 135 Cal.App.4th at p. 1245.)

Important to our analysis is the fact that, in viewing the Agreement as a whole, it expressly provides (in paragraph 25) that the prevailing party to an action "*shall be entitled* to reasonable attorney fees and costs . . . , except as provided in paragraph 22A." (Italics added.) Further, we note that the first sentence of paragraph 22A provides that "[t]he Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, *before resorting to . . . court action*." (Italics added.) Since the fourth sentence of paragraph 22A disentitles a party prevailing in an action from recovering reasonable attorney fees, disentitlement should be found only if that is the clear meaning of paragraph 22A. (See *Palo & Dodini v. City of Oakland* (1947) 79 Cal.App.2d 739, 748 [" '[f]orfeitures are never favored by courts of law or equity, and are never enforced if they are couched in ambiguous terms' "].)

### (1) Existence of Ambiguity in Disentitlement Provision

The initial question is this: Is the language of paragraph 22A—specifically the fee disentitlement provision in the fourth sentence (clause (ii)) based upon the refusal of the other party's mediation request—ambiguous, i.e., is "reasonably susceptible to more than one interpretation[?]" (*Scheenstra*, *supra*, 213 Cal.App.4th at p. 389.) One interpretation

---

[10] Indeed, the parties did not address the issue of contract interpretation in their pleadings below, and the trial court did not expressly raise the subject of interpreting the Agreement in its tentative decision that was adopted after the hearing on the Meyers' attorney fee motion. There was little contract interpretation analysis presented by the parties in their appellate briefs. We requested supplemental briefing, asking the parties to provide analyses interpreting the language of the Agreement, including the language of paragraph 22A, supporting their respective positions. We have received and have considered the parties' supplemental briefing.

17

of the language (the first interpretation)—that ". . . any Party [who] . . . (ii) before commencement of an action, refuses to mediate after a request has been made . . . shall not be entitled to recover attorney fees . . ."—is that if, before an action is commenced, a party (Party A) refuses a request to mediate made by the other party (Party B), then Party A is barred from recovery of prevailing-party attorney fees, regardless of whether he or she reverses that position regarding mediation before the action is commenced. The Meyers could not recover attorney fees under this interpretation.

Another construction (second interpretation) of the fee disentitlement provision—apparently advanced by the Meyers here—is that if Party A refuses Party B's pre-suit mediation request, Party A may still recover prevailing-party attorney fees if Party A subsequently expresses a willingness to mediate prior to any court action being filed. Under this second interpretation, the disentitlement provision in the fourth sentence (clause (ii)) of paragraph 22A would not be triggered if the party initially refusing to mediate (Party A) retracts that refusal before the action is filed.

Is the Agreement reasonably susceptible to the second interpretation? In answering this question, we consider the language of both the first and fourth sentences of paragraph 22A. (See *American Alternative Ins.*, *supra*, 135 Cal.App.4th at p. 1245 [court "consider[s] the contract as a whole and interpret[s] the language in context, rather than interpret a provision in isolation"].) In addressing the fourth sentence, in reading the two clauses together, we observe that the focal point of disentitlement is the status of mediation efforts *immediately prior to* the filing of an action. *In clause (i)*, the party who commences an action must, at some moment up to its filing, have attempted to resolve the dispute through mediation to avoid application of the fee disentitlement provision. Similarly, *in clause (ii)*, the party who later prevails must, at some moment prior to an action being filed, have responded favorably to the other party's mediation request to avoid application of the fee disentitlement provision. Considering these two clauses together, it would be incongruous if fee disentitlement were applied (in clause (ii))

18

against the party who has agreed to mediation shortly before an action is filed but not applied (in clause (i)) against the party who controls the litigation who, shortly before filing it, attempts to mediate the dispute.

The first sentence of paragraph 22A, like the fourth sentence, indicates that the end point by which a party must make efforts to mediate the dispute is when an action is filed. The first sentence of paragraph 22A requires that the parties mediate any disputes "*before* resorting to . . . court action." (Italics added.) Thus, the first sentence imposes a *pre-suit* duty to mediate, while the fourth sentence imposes a contractual penalty—a disentitlement to prevailing-party attorney fees—for failing to satisfy that duty. Reading the two sentences together, the disentitlement penalty (fourth sentence) applies only when the party who ultimately prevails violates the duty to mediate (first sentence) by either filing an action without first attempting to mediate the dispute (fourth sentence, clause (i)), or by refusing the other party's request to mediate and not retracting that refusal before an action is filed (fourth sentence, clause (ii)). Further because the duty to mediate imposed under the first sentence of paragraph 22A applies uniformly to all parties, it would be seemingly inappropriate to interpret the disentitlement provision as giving a less stringent application to the party commencing the court action than to the other party to whom a mediation request is made.

We therefore conclude that this second interpretation is reasonable, and the fee disentitlement provision is ambiguous. (See *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 842 [" 'contract . . . capable of more than one reasonable interpretation . . . is ambiguous . . . [and the court must] determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation' "].)

19

## (2) The Controlling Interpretation of the Disentitlement Provision

Having resolved "[t]he threshold question . . .of whether the contract is ambiguous" (*Scheenstra*, *supra*, 213 Cal.App.4th at p. 389), we next determine which of the two interpretations of the disentitlement provision of the Agreement " 'will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and [will] avoid . . . mak[ing] the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity.' [Citation.]" (*DeJoria*, *supra,* 78 Cal.App.5th at p. 1003.)

Considering these two reasonable interpretations, under the first interpretation, the party refusing a pre-suit mediation request is thereafter barred from recovering prevailing-party attorney fees *regardless of the circumstances following the refusal.* Taken to its extreme, if the party refused the request and the next day (perhaps as a result of seeking advice of newly retained counsel), reversed his or her position (before the requesting party filed an action), he or she would be precluded from recovering attorney fees. Such a construction would not serve "the public policy of promoting mediation as a preferable alternative to judicial proceedings" where mediation may result in a dispute "be[ing] resolved in a much less expensive and time-consuming manner." (*Leamon*, *supra*, 107 Cal.App.4th at p. 433.) Rather, such an interpretation would potentially discourage mediation; if the party, through his or her initial refusal, has forfeited the right to prevailing-party attorney fees, there is less incentive to reverse that position before an action is filed.

In addition, application of the first interpretation would seemingly conflict with the first sentence of paragraph 22A, since the party, by his or her pre-suit retraction of a prior refusal to mediate, *did fulfill* the agreement "to mediate any dispute or claim . . . *before resorting to . . . court action.*" (Italics added.) In contrast, as discussed, *ante*, applying the second interpretation to conclude there is no disentitlement when a party

20

refuses a pre-suit request to mediate but (also pre-suit) retracts that refusal is consistent with the structure of paragraph 22A: namely, a party has not violated his duty to mediate a dispute "before resorting to . . . court action" (first sentence) if that party has indicated a pre-suit willingness to mediate, even if that party had previously refused the other party's request to mediate (fourth sentence).

Moreover, the first interpretation ignores the practical realities of dispute resolution and litigation. It is undeniable that emotions of parties embroiled in a dispute can sometimes run high, irrespective of whether the dispute has culminated in litigation. This can result in an evolution of positions taken by the parties. Applying the first interpretation to a party's initial refusal of a pre-suit mediation request ignores the realistic and practical possibility that the refusing party may, upon reflection, change his or her mind about mediation before an action is filed. (See *County of Humboldt v. McKee* (2008) 165 Cal.App.4th 1476, 1498 [court " 'shall avoid an interpretation which will make a contract extraordinary, harsh, unjust, inequitable or which would result in absurdity' "].) By way of contrast, applying the second interpretation to the fee disentitlement provision yields a more flexible approach, does not run the risk of discouraging mediation, and accommodates the practical realities of dispute resolution and litigation. In short, application of the second interpretation " 'make[s] the instrument . . . reasonable . . . and avoid[s] . . . mak[ing] the instrument . . . harsh, unjust, [or] inequitable . . .' [Citation.]" (*DeJoria*, *supra,* 78 Cal.App.5th at p. 1003.)

Lastly, applying the fee disentitlement provision—either when a party initiates an action without attempting to resolve the dispute through mediation, or when a party refuses the other party's pre-suit request to mediate—results in the forfeiture of a party's contractual right to prevailing-party attorney fees. (See 14 Williston on Contracts (4th ed. 2013) § 42:1 "a forfeiture occurs . . . when a party loses a right or privilege, . . . because of a . . . breach of obligation"]; see also *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 877 [defining forfeiture as " '[t]he divestiture of property

21

without compensation' or '[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty' "].)  A provision or condition that results in the "[f]orfeiture of a contractual right is not favored in the law.  [Citation.]" (*Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1157.)  As the California Supreme Court has explained, "[There is a] settled policy of the law not to enforce a forfeiture in the absence of a clear statement to that effect. . . .  'Forfeitures are not favored by the courts, and if an agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the court to avoid it.  The burden is upon the party claiming a forfeiture to show that such was the unmistakable intention of the instrument.  [Citations.]' " (*Universal Sales Corp. v. California Press Mfg. Co.* (1942) 20 Cal.2d 751, 771 (*Universal Sales*); see also Civ. Code, § 1442 ["[a] condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created"].)  Thus if there are "two possible constructions, one of which leads to a forfeiture and the other avoids it. . . , the policy and rule are settled . . . in the interpretation of ordinary contracts . . . that the construction which avoids forfeiture must be made if it is at all possible.  [Citations.]" (*Ballard v. MacCallum* (1940) 15 Cal.2d 439, 444 (*Ballard*).)

With these principles in mind, the application of the first interpretation to paragraph 22A (fourth sentence, clause (ii)) results in the refusing party's *automatic forfeiture* of the contractual right to prevailing-party attorney fees, regardless of whether he or she withdraws that refusal before an action is filed.  Applying the second interpretation, a party refusing a pre-suit request to mediate would be barred from recovering prevailing-party attorney fees *only if* he or she did not retract that refusal by agreeing to mediate before the action is filed.  Therefore, given that " '[f]orfeitures are not favored by the courts' " (*Universal Sales*, *supra*, 20 Cal.2d at p. 771), and that it is our duty to " 'reasonably interpret[ the Agreement] so as to avoid a forfeiture' " (*ibid.*), we find that the second interpretation which will avoid a forfeiture is the one that can and must be selected here (see *Ballard*, *supra*, 15 Cal.2d at p. 444).

22

As a further basis for our conclusion, we note that other courts have considered versions of the fee disentitlement provision we consider here to be conditions precedent. (See, e.g., *Cullen*, *supra*, 206 Cal.App.4th at p. 1076; *Leamon*, *supra*, 107 Cal.App.4th at p. 433.) "Because 'such conditions [precedent] are not favored by the law, [they] are to be strictly construed against one seeking to avail [it]self of them. [Citations.]' [Citation.]" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 594.) Moreover, " 'conditions in a contract, will if possible be construed to avoid forfeiture.' [Citation.]" (*Estate of Jones* (2022) 82 Cal.App.5th 948, 954.) Based upon these principles as well, strictly construing the provision against the Evleshins (the party seeking to avail itself of the condition precedent), we must apply the second interpretation to the fee disentitlement provision here.

### 3. Frei *and Related Cases*

The trial court concluded that, notwithstanding that the Meyers were the prevailing parties, they could not recover their attorney fees because of "their refusal to mediate, per the terms of the contract." In so concluding, the trial court relied on *Frei*, *supra*, 124 Cal.App.4th 1506. We conclude that *Frei* is distinguishable and does not support the trial court's conclusion.

In *Frei*, *supra*, 124 Cal.App.4th at pages 1509-1510, the plaintiffs-buyers brought a specific performance action against the defendants-sellers after the latter canceled the parties' real estate sales contract. After the defendants ultimately prevailed,[11] they brought a motion for attorney fees under a provision of the standard form residential

---

[11] The trial court initially entered judgment of specific performance in favor of the plaintiffs-buyers. (*Frei*, *supra*, 124 Cal.App.4th at p. 1510.) In a prior appeal, the appellate court reversed, and in an unpublished decision, directed the trial court on remand to enter judgment in favor of the defendants-sellers. (*Ibid.*)

23

purchase contract authorizing fees to the prevailing party.  (*Id.* at p. 1510.)  The contract required that the parties mediate any disputes before the commencement of litigation, and it contained language—dissimilar in one respect to that found in the Agreement here[12]—reading in relevant part:  " 'If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action.' "  (*Id.* at p. 1509.)[13]  The trial court, over the plaintiffs' objection, granted the motion for attorney fees, concluding that it was satisfied the defendants had not refused to mediate the dispute.  (*Id.* at p. 1510.)

The appellate court reversed.  The court pointed out that the undisputed record was that the defendants had:  (1) acknowledged having received the plaintiffs' pre-suit demand for mediation; (2) not responded to that demand by the time the plaintiffs filed the action approximately two weeks later; (3) received a second mediation demand from the plaintiffs approximately three weeks after the lawsuit was filed; (4) responded, through counsel, to the second demand by indicating they " 'were not interested in mediating the dispute' "; and (5) reiterated, through counsel, their unwillingness to

---

[12] We observe that the language in the standard form contract between the Evleshins and the Meyers, unlike the contract in *Frei*, contained a specific qualification that the refusal occur prior to the action, i.e., "If . . . any Party [who] . . . *before commencement of an action,* refuses to mediate after a request has been made . . ."

[13] The agreement was a standard form California Association of Realtors (CAR) contract; CAR "recently [as of 2004] added [a] clause providing that a prevailing party in litigation or arbitration who *refused* a request to mediate made before the commencement of such proceedings is barred from recovering attorney fees." (*Frei, supra*, 124 Cal.App.4th at p. 1508, original italics.)  The relevant language of the CAR form contract previously read:  " 'If any party commences an action based on a dispute or claim to which this paragraph applies, without first attempting to resolve the matter through mediation, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. . . .' " (*Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 767.)

engage in mediation approximately 11 weeks after the action was filed. (*Frei*, *supra*, 124 Cal.App.4th at p. 1513.) The court in *Frei* concluded that there was no substantial evidence to support the trial court's finding that the defendants had not refused to mediate. (*Ibid.*) The appellant court held that, to the contrary, "[the defendants'] course of conduct constituted a refusal to respond to a clear and unequivocal request to mediate." (*Id.* at p. 1514.)

Frei is distinguishable. In *Frei*, the appellate court, in concluding that the defendants were precluded from recovering attorney fees, considered the defendants' "course of conduct," and relied in part on the fact that the plaintiffs had also made a demand for mediation *after* filing suit that the defendants rejected (and which rejection they reiterated a month later). (See *Frei*, *supra*, 124 Cal.App.4th at pp. 1513-1514.) Here, there was no post-filing mediation demand by the Evleshins; there was only: (1) the Evleshins' pre-suit demand, which was rejected by the Meyers; and (2) the Meyers' later retraction and expression of their apparent willingness to mediate. Further, the defendants in *Frei* did not *ever* indicate a willingness to mediate. (See *id.* at pp. 1513-1514.) Here—considering the Meyers' "course of conduct" (*id.* at pp. 1513, 1514)—although they initially rejected mediation, it could be reasonably concluded that they *did agree* to mediation, both before and after the Evleshins filed the action.[14] Moreover, in *Frei*, as concluded by the appellate court, there was *no* substantial evidence supporting the trial court's finding that the defendants had *not* refused to mediate the dispute. (See *id.* at p. 1513.) Here, there was evidence from which it could be reasonably

---

[14] Approximately three months after the lawsuit was filed and prior to their filing an answer and cross-complaint, the Meyers indicated in their case management statement that they were willing to mediate the controversy.

25

concluded that the Meyers—after their initial refusal—*did agree* before the lawsuit was filed to mediate the controversy.[15]

Nor does the language found in *Frei* relied on by the Evleshins suggest here that the Meyers' initial refusal to mediate barred their recovery of prevailing-party attorney fees.  In the context of considering a demand for mediation containing no response deadline, the appellate court concluded:  "While a party must be given a reasonable time to respond to a contractual request for mediation, as a practical matter that time ends when the party rejects the request." (*Frei*, *supra*, 124 Cal.App.4th at pp. 1516-1517.) The Evleshins apparently suggest that this language means that once a potential defendant rejects mediation, he or she is barred from later recovering attorney fees—even if he or she revokes that rejection and agrees to mediate before a lawsuit is filed  But, as we have noted, in *Frei*, the defendants rejected mediation both before (through their two-week failure to respond to the mediation request), and after the filing of the lawsuit, and they *never* expressed a willingness to mediate.  The above-quoted language of *Frei* cannot be read to support the Evleshins' position here.  (See *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1156 (*Sagonowsky*) [" '[c]ases do not stand for propositions that were never considered by the court' "].)

The Evleshins also rely on the court's statement in *Frei* that the condition precedent language it considered "means what it says—a party refusing a request to mediate a dispute that ripens into litigation may not recover attorney fees at the conclusion of the litigation, even if that party is the prevailing party." (*Frei*, *supra*, 124 Cal.App.4th at p. 1520.)[16]  Here, however, prior to the matter "ripen[ing] into litigation" (*ibid.*), the Meyers *had arguably agreed to mediate the dispute*.  The court in

---

[15] Accordingly, unlike here, the appellate court in *Frei* was not required to interpret the contract by considering whether it barred prevailing-party attorney fees even if the refusing party later retracted such refusal.

[16] The trial court quoted this language from *Frei* in its tentative decision.

*Frei* was addressing a very different situation—and one involving different disentitlement language (see fn. 12, *ante*)—in which the defendants, both before and after suit was filed, uniformly rejected mediation.  The case thus cannot be relied upon here to support the conclusion that the Meyers are barred from recovering their attorney fees.  (See *Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1156.)

Aside from *Frei*, there is only one published decision addressing whether a party who refuses a request to mediate may recover prevailing-party attorney fees under a standard form CAR residential purchase agreement.  *Cullen*, *supra*, 206 Cal.App.4th 1074 concerned a buyers' claim against the sellers for nondisclosure of defects.  (*Id.* at p. 1076.)  The parties' agreement contained the same language found in *Frei*.  (See *Cullen*, *supra*, at p. 1077.)  The sellers prevailed in their summary judgment motion, and they were awarded attorney fees.  (*Id.* at p. 1076.)  The buyers unsuccessfully argued that attorney fees should be denied because they had twice requested (after the action was filed) that the sellers participate in mediation, but the sellers had refused.  (*Id.* at p. 1077.)  The trial court held that " '[t]here [had been] an insufficient showing of refusal to mediate.' " (*Id.* at pp. 1077-1078.)  The appellate court reversed.  It held there was no evidence that the sellers assented to the mediation requests and rejected the sellers' justification for their refusal that they desired to first receive the buyers' discovery responses and thereafter participate in mediation that would then be more " 'meaningful.'" (*Id*. at p. 1079.)  The court concluded that the language of the agreement did not permit the sellers' claimed justification for refusing the buyers' mediation requests to be used "as [an] excuse[] to the requirement of assenting to mediation in order to recover their legal fees.  The requirement [of an agreement to mediate to recover attorney fees] 'is designed to encourage mediation *at the earliest possible time*' [citation]." (*Ibid.*, original italics, quoting *Lange*, *supra*, 163 Cal.App.4th at p. 1418.)

*Cullen*, *supra*, 206 Cal.App.4th 1074 does not assist the Evleshins. In that case, the party seeking prevailing-party attorney fees never responded affirmatively to a request for mediation. And *Cullen*—unlike the present case—did not involve an initial refusal in response to a pre-suit mediation request that was succeeded by (arguably) a retraction of that refusal before the filing of an action.

We are not aware of any case law that supports the application of the fee disentitlement provision under the circumstances of this case to preclude the Meyers from recovering prevailing-party attorney fees.

We therefore conclude that the trial court erred in concluding that the Meyers, notwithstanding that they were prevailing parties, were precluded as a matter of law from recovering their reasonable attorney fees under paragraph 22A of the Agreement by virtue of their initial refusal to mediate the dispute.[17]

### 4.     *Remand*

The trial court held that, notwithstanding the fact that the Meyers were the prevailing parties, they were barred from recovering their attorney fees because of their initial refusal of the Evleshins' request to mediate the dispute. For the reasons discussed above, we reject this reading of paragraph 22A (fourth sentence, clause (ii)) of the Agreement. We hold here that fee disentitlement (under the Agreement's language in the fourth sentence, clause (ii)) is inappropriate and works an unlawful forfeiture where the

---

[17] The Meyers make additional arguments in support of their claim of error, including: (1) they were exempt from mediation because they were seeking injunctive relief in connection with their dispute with the Evleshins concerning logging on the Property; and (2) because the Evleshins breached the Agreement with respect to their logging obligations, they were not entitled to enforce the Agreement's other provisions, including the the obligation to mediate disputes. Because we conclude the trial court erred in holding that the Meyers were barred as a matter of law under the Agreement from recovering prevailing-party attorney fees because they had initially (prior to the filing of the action) refused to mediate the dispute, we need not address these additional arguments. (See *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 655 [appellate courts generally "decline to decide questions not necessary to the decision"].)

28

party, after its initial refusal to mediate and before an action is filed, expresses a willingness to mediate.

The Meyers contend that their attorney's July 10, 2021 e-mail was an offer to mediate before an action was filed, thereby preventing the triggering of the disentitlement provision in the fourth sentence (clause (ii)) of paragraph 22A. There is evidence in the record to support that contention, including: (a) the July 10, 2021 e-mail itself; (b) the July 14, 2021 response of Sequoia Evleshin indicating he and his wife were no longer willing to mediate; (c) Nicole Evleshin's declaration in support of summary judgment in which she stated that "[the Meyers] requested mediation or arbitration in their [attorney's e-mail] of 7/10/21"; and (d) the Meyers' indication in a case management statement in October 2021 of their willingness to mediate the dispute. Further, the trial court's statement in its tentative decision that "the door to mediation was re-opened in July 2021 by the Meyers" suggests the court itself concluded the July 10 e-mail was an offer to mediate.

In their opposition filed in the trial court, the Evleshins argued that the Meyers were barred from recovering attorney fees because they did not mediate *their own claims* before they "resorted to 'court action. . . .' " The Evleshins identify the Meyers' " 'court action' " to have been their filing of a motion to appoint referee in August 2021— approximately one month *after* the Evleshins had filed their complaint, and three months *before* the Meyers filed their cross-complaint in November 2021. Thus, the Evleshins' argument before the trial court was that the Meyers' attorney fee motion was precluded under the disentitlement language of *clause (i)* of the fourth sentence of paragraph 22A— that "[i]f . . . any Party (i) commences an action without first attempting to resolve the [dispute or claim] through mediation, . . ." he or she will be thereafter barred from recovery of prevailing-party attorney fees.

On appeal, however, the Evleshins make a different argument. They contend in the respondents' brief that *under the disentitlement language of clause (ii) of the fourth*

sentence of paragraph 22A, the Meyers cannot recover their prevailing-party attorney fees because their initial May 31, 2021 rejection of the Evleshins' mediation request was "unequivocal," and "[t]he fact that [the Meyers] later changed their minds and wanted to engage in mediation . . . [was] irrelevant." The Eveleshins assert that "[u]nder *Frei*, nothing more is required to trigger the denial of attorney's fees to the parties refusing mediation, even if they later prevail." Further, in their supplemental letter brief, the Evleshins dispute that the July 10, 2021 e-mail sent by the Meyers' counsel was an offer to mediate. The Evleshins contend that the Meyers, after initially rejecting mediation, were required (but failed) to, "unequivocally state that they were 'accepting the offer of mediation,' or words to that effect."

The record does not reflect that the Evleshins made this argument before the trial court, or that the trial court specifically considered whether the July 10, 2021 e-mail was a specific and unequivocal offer to mediate. Therefore, on remand, the trial court is directed to make a finding on this question.[18] If the trial court concludes that the Meyers did, in fact, make an offer to mediate (effectively retracting their prior May 31, 2021 refusal of the Evleshins' request to mediate), it shall proceed to decide the merits of the Meyers' motion for prevailing-party attorney fees under paragraph 25 of the Agreement.

Lastly, in their letter brief concerning contract interpretation (see fn. 10, ante), the Evleshins argue that the Meyers' claimed mediation request was ineffective because "the Evleshins had already changed their position" in the month-plus between the Meyers' rejection of mediation and the July 10, 2021 e-mail of their counsel. In essence, the

---

[18] The trial court may also consider on remand whether the Meyers, in their filing of the cross-complaint subsequent to the Evleshins filing their complaint, were required to satisfy (and if so, did satisfy) the obligation in paragraph 22A (fourth sentence. clause (i)) of "first attempting to resolve the [dispute or claim] through mediation" before "commenc[ing] . . . an action." From a review of the tentative decision, this argument, asserted by the Evleshins below, does not appear to have been addressed by the trial court.

30

Evleshins assert that the second interpretation of the disentitlement provision (paragraph 22A, fourth sentence, clause (ii)) is inappropriate because the revocation of a pre-suit rejection of mediation may work a hardship upon the party who initially requested mediation (and who ultimately did not prevail in the litigation).[19]  We observe that, based upon a proper interpretation of paragraph 22A of the Agreement, if the trial court finds on remand that the Meyers retracted their initial refusal to mediate and expressed their willingness to mediate before the action was filed, the disentitlement provision would not apply.  We acknowledge that there may be instances in which a prevailing party's initial refusal of a pre-suit mediation request and later (before an action is filed) reversal of that position will negatively impact the non-prevailing party.  That issue was not argued below and is therefore not presently before us.  We decline to address (and express no opinion concerning) the Evleshins' argument beyond stating that: (a) if the trial court finds a pre-suit retraction by the Meyers of their initial refusal to mediate, the disentitlement provision of paragraph 22A (fourth sentence, clause (ii)) will not apply; and (b) if the trial court finds such a retraction by the Meyers, nothing in this opinion shall be construed as precluding the parties from presenting arguments concerning the Meyers' motion for attorney fees that are not inconsistent with this opinion.  (See *In re Joshua S.* (2007) 41 Cal.4th 261, 273 [courts do not " 'issu[e] purely advisory opinions, or consider[] a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute' ''].)

## D.     Denial of Costs

In the motion that was filed after entry of judgment, the Meyers sought an award of costs of $3,340.69.  The trial court denied the Meyers' motion without prejudice,

---

[19] This argument was not made by the Evleshins at the trial level or in respondents' brief.  (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [" 'issues not raised in the trial court cannot be raised for the first time on appeal' "].)

concluding that they had not complied the requirements of rule 3.1700(a)(1) by filing a memorandum of costs. The court also found that the Meyers had failed to provide a basis for an entitlement to expert fees.

On appeal, the Meyers initially conceded in their opening brief that the trial court had correctly held that the Meyers had failed to establish an entitlement to their expert witness fees of $1,950. The Meyers, however, asserted conclusorily in their opening brief that the court erred in its denial of the remainder of the costs claimed in the amount of $1,390.69. In their reply brief, the Meyers now concede—except as to their claim for attorney fees—that they may not recover their prejudgment costs.

This court accepts the Meyers' concession and acknowledges that the trial court correctly ruled that the Meyers, having failed to file a verified memorandum of costs as required under rule 3.1700(a)(1), were not entitled to their prejudgment costs. (See Code Civ. Proc., § 1034, subd. (a); *Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 928-929 [failure to timely file a verified costs bill constitutes a waiver of the right to seek award of prejudgment costs].)

### III.    DISPOSITION

The August 8, 2023 postjudgment order denying the motion of appellants Stephen Meyer and Karin Meyer for attorney fees is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. The parties shall bear their respective costs on appeal.

32

_____
WILSON, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
BROMBERG, J.

*Evleshin v. Meyer*
**H051869**

Trial Court:                                    Santa Cruz County Superior Court
                                                Superior Court No.:  21CV01686


Trial Judge:                                    Hon. Timothy Volkmann


Counsel for Plaintiffs/Respondents:             Law Offices of Kimball J.P. Sargeant
Sequoia Evleshin and Nicole Evleshin            Kimball Sargeant
                                                Judith Ann Carlson


Counsel for Defendants/Appellants:              Charles Arthur Harmon
Stephen Meyer and Karin Meyer


*Evleshin v. Meyer*
**H051869**